**INLAND CONCRETE ENTERPRISES, INC. Employee Stock Ownership Plan, Nicolas L. Saakvitne (as Trustee of the Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan), and Inland Concrete Enterprises Inc. (a California corporation), Plaintiffs,**

v.

**Rune KRAFT (an individual)[1], Defendant.**

**Case No. LA CV 10-01776-VBF**

United States District Court, C.D. California.

Signed August 24, 2016

█

---

1. The undersigned also presides over the related case *Kraft v. Oldcastle Precast, Inc. et al.,* LA CV 15–00701–VBF ("the 2015 case"). In the 2015 case, this Court issued an Order on April 15, 2016 dismissing Kraft's amended complaint *with* prejudice pursuant to FRCP 12(b)(6). *See* 15-701 Doc 44 (not on WestLaw). The Court entered final judgment in favor of defendants there on April 18, 2016 (15-701 Doc 46). By **Order on August 2, 2016 (Doc 54), the Court denied** Kraft's ensuing motion for reconsideration. *See Kraft v. Old Castle*, 15–701 Doc 54, 2016 WL 4120049 (C.D. Cal. Aug. 2, 2016) (Fairbank, J.).

**Also in the 2015 case, this Court on March 24, 2016 declared Kraft a vexatious litigant** and imposed pre-filing restrictions on him. *See* 15-701 Doc 40 at 30-33 (not on WestLaw). The same Order, though, denied without prejudice the motion to declare Kraft Americas Limited Partnership vexatious. *See id.* at 26–30. **Kraft's ensuing motion for reconsideration (Doc 45) is briefed and will be decided by separate opinion.**

Joseph Charles Faucher, Michael A. Vanic, Ryan Salsig, Drinker Biddle & Reath LLP, Los Angeles, CA, for Plaintiffs.

Daniel M. Noveck, Law Offices of Daniel Noveck, Beverly Hills, CA, for Defendant.

**PROCEEDINGS (IN CHAMBERS): ORDER Determining that Kraft's FRCP 60(b)(3) Motion for Relief from June 22, 2011 Judgment is Untimely & Barred By His Failure to Appeal;**

**Dismissing #271 (Motion for Relief from Judgment) With Prejudice for Lack of Jurisdiction;**

**Denying #288 (Inland's Evidentiary Objections)**

PRESENT: HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

This was a diversity action sounding in contract and fraud. In March 2010, Inland Concrete Enterprises Inc. and its Employee Stock Ownership Plan ("Inland ESOP") and the ESOP's Trustee (collectively "Inland")

filed the complaint against Kraft Americas, L.P. ("KALP") [2] and Rune Kraft (an individual) ("Kraft"), *see* Document ("Doc") 1. Kraft and KALP jointly filed an answer and counterclaims through counsel in June 2010 (Doc 16). In July 2010, KALP alone filed an amended answer (Doc 43) which counterclaimed for breach of contract, account stated, quantum meruit, fraud, and promissory estoppel. A week later, Kraft filed a separate answer (Doc 47) in the name of "Rune Kraft, as Chairman of Defendant Kraft Americas, L.P., for himself only."

In August 2010, this Court issued an Order (Doc 61) granting Inland's motion to dismiss KALP's *quantum meruit* counterclaim as barred by the two-year statute of limitations.

Inland moved to compel discovery. On January 7, 2011, the Magistrate granted one motion to compel and denied the other without prejudice. On February 3, 2011, the Magistrate issued an Order (Doc 134) granting Inland's third motion to compel, directing Kraft to produce documents by March 4, 2011 and, finding that his failure to comply with FRCP 34 was substantially unjustified, directing him to pay a sanction of $6,142.50.

On December 6, 2010, this Court issued an Order (Doc 93) directing KALP to show cause why the court should not enter default against KALP and dismiss its counterclaim because it was no longer represented by counsel. On December 20, 2010, having received no filing from KALP, this Court issued an order (Doc 96) directing entry of default against KALP; the Clerk entered default against KALP that same day (Doc 97). In February 2011, this Court denied without prejudice Inland's application for default judgment against KALP.

COURT FOUND THAT RUNE KRAFT AND KALP COMMITTED INTENTIONAL SPOLIATION

In March 2011, this Court denied KALP's motion to vacate default and partially grant-

---

**2.** In another related case, *KALP v. Oldcastle Precast, Inc.*, where Kraft was not a party, KALP claimed that Oldcastle, a maker of precast concrete and polymer concrete products, had breached a confidentiality agreement and misappropriated trade secrets in connection with Oldcastle's acquisition of Inland. Judge Kronstadt dismissed KALP's claims as time-barred and entered final judgment against KALP in January

2014. *See* 12-3681 Docs 1, 21, 188, 195, and 196. On appeal, the Circuit affirmed by Order filed February 23, 2016. *See KALP v. Oldcastle Precast,* 641 Fed.Appx. 718 (9th Cir. 2016). The time for KALP to petition for a writ of certiorari elapsed on about May 23, 2016, *see Canchola v. Biter,* 2014 WL 3055914, *3 (C.D. Cal. July 2, 2014) (citations omitted).

ed Inland's motion to sanction KALP and Kraft for spoliation. **The Court found that Kraft had fabricated documents and willfully destroyed a hard drive which was a potential source of discovery material.** The Court explained the parties' dispute regarding the authenticity of certain documents Kraft had filed as evidence in this case:

### 3. Dispute Regarding Authenticity of Documents.

On May 28, 2010, Rune Kraft brought a motion to dismiss for lack of personal jurisdiction. Dkt. 13. In support of that motion, he swore in a declaration that attached several copies of proposed broker fee agreements and letters purportedly transmitting the proposed broker fee agreements. Kraft Decl. ¶¶ 21-26, Exs. B, C, D, E, F, [and] G.

Exhibit B to the Kraft Decl. purports to be a May 17, 2007 letter from Rune Kraft and Vicarea to Tom Lynch of Inland, Inc., which sets forth general details about the parties' dealings and attaches a May 13, 2007 proposed fee agreement including Vicarea as a party. Plaintiffs contend that Kraft never delivered the purported May 13, 2007 agreement to Lynch until December 12, 2007 and that Lynch had never seen this letter until this litigation. Lynch Decl. ¶ 22.

Exhibit C to the Kraft Decl. purports to be a May 31, 2007 letter from Kraft and Vicarea to Lynch, attaching a May 13, 2007 proposed fee agreement including Vicarea as a party. Plaintiffs contend that Kraft never delivered this letter to Lynch and that Lynch had never seen this letter until this litigation. Lynch Decl. ¶ 30.

Exhibit D to the Kraft Decl. purports to be an August 2, 2007 letter from Kraft and Vicarea to Lynch, attaching a July 31, 2007 proposed fee agreement including Vicarea as a party. Plaintiffs contend that Kraft never delivered this letter to Lynch and that Lynch had never seen the letter until this litigation. Lynch Decl. ¶¶ 35-36.

### 4. Discovery in This Action

Plaintiffs contend that they sought discovery in order to obtain meta-data evidence that the documents Rune Kraft attached to his declarations [purported May 2007 and August 2007 letters] were created after the Complaint was filed [in 2010].

Plaintiffs propounded an interrogatory asking Kraft to identify the computer use[d] to create Exhibits B, C, D, E, F, and G to the Kraft Decl. Salsig Decl. ¶ 7, Ex. D. In response, Kraft wrote: "The documents were prepared on a Gateway computer owned by Kraft Americas, L.P. The computer is no longer in use. It was destroyed and then disposed of as waste. [I]ts present location is unknown, but likely a landfill." Salsig Decl. ¶ 8, Ex. E.

Plaintiffs propounded a Rule 34 request seeking the native files and all electronically store[d] information relating to the documents attached to the Kraft Decl. Salsig Decl. ¶ 9, Ex. F (RFPs 15-26). In response, Kraft Americas, L.P. produced a CD containing Microsoft Word files corresponding to the [Kraft] declaration exhibits. Salsig Decl. ¶ [¶] 1-4, Ex. A. Plaintiffs contend that the files, including the meta-data associated with the files, contain significant anomalies showing their lack of authenticity.

Plaintiffs propounded a second set of interrogatories requesting that Kraft state all facts related to the destruction of the Kraft's [sic] computer and requesting identification of each person who had knowledge of the destruction. Salsig Decl. ¶ 10, Ex. G.

Kraft responded that the computer "was disposed of on February 21, 2008. The hard drive on the computer was bad. Kraft Americas, L.P. authorized the disposal of the computer. Justicia, Inc. destroyed the hard drive and disposed of the computer. Kraft Americas, L.P. had copies of all the files on the Gateway computer." Salsig Decl. ¶ 10, Ex. H. Kraft identified Dale Maloof as the only other person having knowledge of the destruction. *Id.*

In a second set of Rule 34 requests, [Inland] asked the Kraft defendants to produce all documents relating to the destruction of the Gateway computer and to produce for inspection any and all electronic media containing back-ups, copies, etc. of the data on the destroyed Gateway computer. Salsig Decl. ¶ 12, Ex. I.

In response, Kraft produced three documents purporting to bolster Kraft's claims that the computer was destroyed due to its hard drive being "bad." Salsig Decl[.] ¶ 13, Ex. J. Included in these documents is a purported facsimile from "Justicia Asset Recovery" dated February 19, 2008. The body of the document reads:

> "Rune, We have completed our diagnostics of the computer to determine if the hard drive is bad. The findings are that the hard drive is bad. Since you already have copies of all of the files on CDs, I recommend that we destroy the hard drive and dispose of the computer as waste in the proper manner. Please let me kn ow if this is what you want me to do. Also confirm that you have copies of all of the files on CDs."

This document is purportedly signed by Dale Maloof of Justicia, Inc. Salsig Decl. ¶ 13, Ex. J. [Inland] contest[s] the authenticity of the purported facsimile from Justicia, Inc.

Doc 170 at 7-9 (alterations added). **The Court's March 9, 2011 Order Granting Inland's Motion for Spoliation Sanctions went on to find that Kraft and KALP willfully directed the destruction of the hard drive and fabricated the aforementioned documents, with a "high" degree of fault.** The Court provided the following analysis, in pertinent part, regarding the computer hard-drive spoliation by Rune Kraft and KALP:

**B. Analysis**

[Inland] assert[s] that, while it is unlikely that the Gateway computer was actually destroyed, it certainly was not destroyed because it had a "bad" hard drive as claimed by Defendants. Thus, [Inland] assert[s], now that Rune Kraft has taken the position that the computer was destroyed at his instruction, Defendants have breached their duty to preserve evidence and should be sanctioned. The Court agrees with [Inland].

**1. Standard** * * *

**2. Duty to Preserve Evidence and Breach**

The Court finds that [Kraft and KALP] had a duty to preserve the Gateway computer. Defendants had notice of a likely claim before they purportedly [according to Kraft and KALP themselves] destroyed the Gateway computer.

For example, the email sent by Kraft to [Inland] on December 11, 2007 clearly threatened litigation over the fees he claimed to be owed. *See* [ ("]Spoliation Saakvitne Decl.") ¶ 1, Ex. A. Kraft sent an additional email to Oldcastle on December 12, 2007, again threatening litigation. Salsig Decl. ¶ 6, Ex. C. On December 17, 2007, Kraft sent a letter to [Inland] demanding payment of $5,000,000. Kraft Decl. ¶ 17, Ex. A.

[Kraft and KALP] also had notice that the data on their computer wold be relevant to the potential claim. First, Kraft would have known that the documents on [the] Gateway computer that he used would be relevant to his threatened claim for fees; he used the computer to generate his purported proposed fee agreements. Salsig Decl. ¶ 8, Ex. E.

In addition, [he] had notice that the meta-data would be relevant. Kraft was informed of Lynch's belief that before December 12, 2007, Lynch had never seen a purported fee agreement dated May 13, 2007. Supp. Saakvitne Decl. ¶ 50, Ex. 45. The meta-data surrounding that document [the purported May 13, 2007 fee agreement] would be highly relevant to prove or disprove Defendants' claim as to its date of creation.

[Kraft and KALP] contend that they could not be expected to reasonably foresee [Inland's] actions, as [Inland] ... initiated this lawsuit. However, the fact that another party initiated the lawsuit does not exempt a party from its duty to preserve evidence once a potential claim is identified. *See In re Napster*, 462 F.Supp.2d [1060] at 1078 [ (N.D.Cal.2006) ].... As stated above, [Kraft and KALP] clearly had notice of a potential claim as shown by their own emails threatening litigation.

The Court also finds that [they] breached their duty to preserve evidence when they purportedly ordered the destruction of the

computer in February, 2008. *See* Salsig Decl. ¶ 10, Ex. H.

[Kraft and KALP] contend that because they backed up files pertaining to the Transaction on a CD, any destruction of the computer hard drive did not entail an intentional destruction of the evidence at hand. This contention is unpersuasive.

As a preliminary matter, even if the hard drive were "bad," there was not sufficient justification to destroy it. Kraft admitted that "you can extract information from a hard drive if it is not disposed of properly ... to remove any possibility of any information on the hard drive getting out ever they recommend that you physically destroy the drive." Salsig Decl[.] ¶ 19, Ex. M (Feb. 11, 2011 Kraft Depo. at 346:9-16). If the hard drive had been preserved, [Inland] could have had forensic experts attempt to extract data from it.

In addition, [Inland has] provided sufficient evidence in support of their contentions that

(1) Rune Kraft created documents attached to the Kraft Decl. that, if authentic, would provide some evidence that the name Vicarea was included in documents relating to the transaction as early as May 2007;

(2) Plaintiffs were told that there were no issues regarding the destruction or preservation of evidence (*see* Joint Rule 26 Report (dkt. 11));

(3) When Plaintiffs sought to discover the computers on which the challenged documents [had been] created in order to prove that they were fabrications, Kraft contended that the computer was purportedly destroyed more than two years prior because the hard drive was "bad";

(4) Kraft then produced a set of documents attesting to the badness of the ... hard drive and evidencing destruction of the computer by a man who does not appear to be a computer expert.

All of this indicates that (5) the computer was not "bad," and that the computer,

assuming it was destroyed as Kraft claims, was destroyed willfully.

**For example, the Court finds that the purported facsimile from Justicia to [Kraft and KALP] regarding the destruction of the computer (Salsig Decl. Ex. J) was fabricated.**

**First,** the statements that Justicia ran "diagnostics of the computer to determine if the hard drive is bad" and that its "findings are that the hard drive is bad," without any further explanation provided, do not read like the statements of a professional computer company ....

**Second,** the document, while it contains a date stamp that appears to have been put on by a fax machine, does not include sending or receiving fax numbers in the header or footer.

**Third,** the document does not list the physical address, telephone number, fax number, email address, or any other contact information for either Justicia or Dale Maloof.

**Fourth,** although Kraft testified that he had no business or personal relations with either Justicia or Dale Maloof other than his destruction of the computer and a vague discussion of a business tracking cars (*see* Salsig Decl. ¶ 19, Ex. M (Kraft Feb. 11, 2011 Depo. 342:18 [through] 345:21)), Dale Maloof has been identified by the California Court of Appeals [as] a "corporate representative of the Kraft Companies" in an unrelated lawsuit involving Rune Kraft. *See Oliver v. Pac. Real Estate Holdings, Inc.,* 2008 WL 3198223 (Cal. App. 5th Aug. 8, 2008).

**Fifth,** Justicia, Inc. was dissolved in 2003, over five years before the purported facsimile; Justicia also lists Laverne Guthrie as its statutory agent, and Kraft testified that Laverne Guthrie is a director of Vicarea. *See* Salsig Decl. ¶ 20, Ex. N; Salsig Decl. ¶ 18, Ex. L (Jan. 26, 2011 Kraft Depo. 72:2-15).

**And sixth,** [Kraft and KALP] do not provide sufficient explanation for these highly suspicious occurrences in the[ir] Opposition [to Inland's motion for spoliation sanctions].

In sum, [Inland has] **adequately demonstrated [Kraft & KALP] had a duty to preserve the Gateway computer, and that ... [it] was wilfully destroyed at [their] instruction ....**

Doc 170 at 9 and 10-12 (boldface and some ¶ breaks added). **That same March 2011 Order found that Kraft and KALP had a "high" degree of fault with regard to the destruction and fabrication of evidence:**

> For reasons stated in the Spoliation Motion, [the notion that Kraft purportedly created and transmitted] Kraft Decl. Exs. B, C, D, E, F, and G at or near the times that appear on the face of the documents are [sic] highly questionable.
>
> *[Inland] present[s] sufficient evidence that [Kraft and KALP] intentionally destroyed the computer that may have shown the actual creation date of the disputed documents through forensic examination. [They] then attempted to support their contention that the hard drive on the computer was "bad" by producing a fabricated document* [purported 2/19/2008 fax from Justicia to Kraft].

Doc 170 at 13 (emphasis added). **The March 2011 Order further found that Kraft and KALP's spoliation had caused a high degree of prejudice to Inland, and that a lesser sanction would be inadequate:**

> The Court also considers the degree of prejudice suffered by [Inland], and determines that the degree of prejudice suffered is high. [Inland's] ability to determine the creation date of the challenged documents by forensically examining the computer for evidence of altered meta-data was cut off by the destruction of the Gateway computer. In addition, [Inland] Plaintiffs are precluded from discovering other documents favorable to their declaratory judgment and breach of fiduciary duty claims that may have been on the computer before it was destroyed.
>
> The Court also considers whether there is a lesser sanction that would avoid substantial unfairness to the opposing party and will serve to deter such conduct by others in the future. The Court determines that the sanction issued is not substantially unfair to the opposing parties [Kraft and KALP] in light of their conduct, and that a lesser sanction (such as by granting [sic] part (a) of [Inland's] request but not part (b)) would not serve to deter evidence destruction by parties such as [Kraft and KALP] in the future.
>
> The Court also considers the relationship between the destroyed evidence and the sanctions requested. The sanctions issued here are reasonably tailored to sanction parties for destroying the evidence that could have shown whether the documents parties rely on to prove the involvement of Vicarea early in the Transaction were indeed created at or near the dates that appear on the documents [the purported letters from Kraft and Vicarea to Tom Lynch of Inland, Inc. dated May 17, 2007 and August May 31, 2007 and August 2, 2007, *see* Kraft Decl. Exhibits B, C, and D].

Doc 170 at 13.

**The Court also permitted defense counsel Berkes Crane to withdraw,** based in part on their representation that KALP owed its lawyers $94,000 in fees as of July 2010 and had ignored requests for payment.

**Kraft and KALP filed a motion to vacate the Spoliation / Default Order, which this Court denied in April 2011 (Doc 198). The Court denied KALP's ensuing Ex Parte Application for Leave to File Motion for Reconsideration" (Doc 212). By** Order issued May 2, 2011 (Doc 217), this Court explained as follows:

> Grounds for ex parte relief, including a true emergency not of [KALP]'s creation, have not adequately been shown. * * * Defendant has been warned repeatedly that it cannot appear without counsel, yet has failed to maintain its representation. Even if the Court were to assume that defendant Kraft Americas LP was completely without fault in the withdrawal of its prior attorney, its current attorney has been substituted since March 29, 2011 [about five weeks earlier]. Insufficient explanation is given for why a motion to vacate entry of default could not have been brought without requiring a compressed

briefing schedule to the prejudice of [Inland].

In addition, the Application does not sufficiently show a likelihood of success on the merits. Insufficient information is given for the Court to assess whether good cause exists to vacate the default. The only new fact presented is that 20 days after the Court granted [KALP]'s prior counsel's motion to withdraw, [KALP] obtained new counsel. However, [KALP] gives insufficient explanation regarding the circumstances under which previous counsel withdrew, and thus has given insufficient information for the Court to assess whether [KALP]'s failure to have counsel until the eve of trial is excusable, or whether [KALP] is at fault due to failed gamesmanship.

Doc 217 at 1-2.

On April 1, 2011, Inland filed a motion for default judgment against KALP alone (Docs 190-194). KALP through counsel filed opposition, and Inland filed a reply. By Order issued April 25, 2011 (Doc 211), this Court denied the motion without prejudice to refiling later if appropriate. Relying on Fed. R. Civ. P. 54(b)'s presumption against the entry of judgment as to fewer than all claims and all parties, the Court stated, "in light of the interest in avoiding potentially conflicting outcomes, [Inland] has not shown that default judgment against only [KALP] should be entered at this time when the action is continuing against ... Kraft." Doc 211 at 2.

## COURT ADOPTS RECOMMENDATION TO ENTER DEFAULT AGAINST RUNE KRAFT

On May 12, 2011, the Magistrate issued an R&R recommending that the Court strike Kraft's answer and enter default judgment against him because he had "demonstrated willfulness and bad faith in failing to respond to the Court's discovery orders" and "his disobedient conduct [wa]s not beyond his control." R&R at 6. The Magistrate recounted Kraft's discovery conduct:

Here, [Kraft] has failed to provide further responses to [Inland's] First Set of Interrogatories and failed to pay sanctions as ordered by the Court on January 7, 2011.

Defendant has also failed to provide further responses to [Inland's] First Set of RFPs [Requests for Production] and failed to pay sanctions as ordered by the Court on February 3, 2011. (Dkt. No. 179 at 2, Salsig Decl. at 3-4, Ex. I.) Indeed, [Kraft] has unequivocally refused to comply.

For instance, at his deposition, Defendant [Kraft] testified that "[a]nd I'm here to tell you, Judicial Officer P[a]rada, that none of the answers that I have given to the First Set of Interrogatories, none of the answers that I have given to the First Set For [sic] Requests for Production of Documents, none of the responses that I have given to the First Set of Requests for Admissions, will be changed." (Dkt. No. 179-1 at 2, Salsig Decl. Ex. A at 378-79).

[He] further testified that "[i]t does not matter, Judicial Officer ... P[a]rada, whether you issue a sanction in the amount of a trillion dollars, or if you issue a sanction of death by lethal injection, none of the answers will ever be changed from the first time, period." (*Id.* Ex. A at 379.)

Finally, [Kraft] sent an ex parte letter and email directly to the Court stating that "[t]he United States District Court [for the] Central District of California is hereby informed that Rune Kraft will not be coerced by judicial officers to change any of his answers to discovery against his will." (Dkt. No. 173); *see also* Dkt. No. 179-1 Ex. I ("Rune Kraft will under no circumstances change his answers to any discovery as a result of coercion.").

Based on the foregoing, the Court finds that [Rune Kraft] has demonstrated willfulness and bad faith in failing to respond to the Court's discovery orders and that his disobedient conduct is not outside of his control. Thus, drastic sanctions are warranted.

Doc 222 (May 12, 2011 R&R) at 5-6 (some ¶ breaks added) (concluding citations omitted).

Noting the undersigned's prior determination that Kraft and KALP had also intentionally fabricated documents and destroyed a computer which was an obvious potential source of discoverable information, the Mag-

istrate recommended striking Kraft's answer and entering default (not yet default judgment) against him, *see id.* at 7–9. **The Magistrate reasoned that lesser sanctions would be insufficient because it was**

> clear that [Kraft] has no intention of complying with the Court's discovery orders. ( [Doc 179-1] at 23.) Despite the imposition of less drastic sanctions monetary sanctions imposed on [Kraft], he has failed to pay those sanctions and has flatly refused to comply with the discovery orders. Based on Defendant's deposition testimony, his communications with the Court, and his previous misconduct involving the fabrication of ... documents and the willful destruction of a computer, the potential source of discovery relevant to this action, the Court finds that less drastic sanctions have had no impact on Defendant. Thus, the final factor [of the five factors set forth in *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991)] weighs in favor of terminating sanctions.

Doc 222 (May 12, 2011 R&R) at 8-9. The Magistrate also recommended requiring Kraft to pay $8,865 to Inland for attorneys fees that Inland incurred in bringing the motion for default judgment, *see* Doc 222 at 9.

**Four days later, on May 16, 2011, all parties, including Kraft and KALP *through counsel*, filed a joint notice stating that "neither Plaintiffs nor Defendants intend to file a written statement of Objections with points and authorities in support thereof or to otherwise object to the Report and Recommendations [sic, plural]." Doc 224 at 2. This Court issued an Order on May 18, 2011 adopting the R&R without objection.** As recommended, the Court sanctioned Kraft by striking his answer and entering default against him pursuant to FRCP 55(a). *See* Doc 226 at 1-2. In light of the fact that default had then been entered against both Kraft and KALP, the Court vacated the trial and invited Inland to move for default judgment, *id.* at 2.

JUNE 22, 2011 ENTRY OF DEFAULT JUDGMENT AGAINST RUNE KRAFT AND KALP

In May 2011, Inland filed a motion for a $3 million default judgment against Kraft and KALP. After briefing, the Court issued an Order on June 22, 2011 granting Inland's motion. As a consequence of the default, the Court took as true "the well-pleaded allegations of the complaint relating to liability ... but not the allegations as to the amount of damages." Doc 247 at 2 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)); *see also Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp.*, 149 F.Supp.3d 1208, 1217 n.69 (D. Nev. 2016) (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)).

As to plaintiffs' first and second claims for declaratory relief, the Court concluded that plaintiffs were entitled to a declaration that Kraft and KALP were not entitled to any fee or compensation from any plaintiff in connection with the December 17, 2007 sale by Inland ESOP to Oldcastle of all of Inland ESOP's stock in Inland, Inc. ("the Transaction"). *See* Doc 247 at 2. Noting that Kraft's opposition did not contest Inland's entitlement to judgment on the first two claims, the Court determined that "default judgment is consistent with" the Court's March 9, 2011 Spoliation Sanction Order (Doc 170), the March 25, 2011 Order on Inland's summary-judgment motion (Doc 185), and the May 18, 2011 Order adopting the R&R (Doc 226). *See* Doc 247 at 3.

As to the third claim, damages for breach of fiduciary duty, the Court concluded that Inland ESOP and its Trustee were entitled to $3 million in compensatory damages. *See* Doc 247 at 2. The Court held that Kraft and KALP had violated California's requirement that a broker adhere to "the same obligation of undivided service and loyalty that [the law] imposes on a trustee in favor of his beneficiary." Doc 247 at 3 (quoting *Ford v. Cournale*, 36 Cal.App.3d 172, 180, 111 Cal. Rptr. 334 (Cal. App. 1973)); *see also Kornievsky v. CBRE, Inc.*, Nos. G050319, G050320, and G050675, 2016 WL 520285, *12 (Cal. App. Feb. 9, 2016) (not in Cal. App.) ("[A] broker's fiduciary duty to his client requires the highest good faith and undivided service and loyalty.' ") (quoting *Field v. Century 21 Klowden–Forness Realty*, 63 Cal.App.4th 18, 25, 73 Cal.Rptr.2d 784 (Cal. App. 1998)).

The Court determined that the Kraft parties had "functioned as brokers in the Transaction and represented to Inland ESOP that they were acting solely as its broker and were 'trying to get the highest and best value for Inland and its shareholders.'" Doc 247 at 4 (quoting Salsig Dec. Ex. D & Saakvitne Dec. ¶ 22). The Court also determined the Kraft parties breached the fiduciary duty applicable to brokers by failing to provide the "fullest disclosure of all material facts concerning the transaction that might affect the principal's decision." Doc 247 at 3 (cite omitted). The Court explained the Kraft parties' breach of their fiduciary duty to plaintiffs as follows:

On July 26, 2007, Kraft and Oldcastle came to an agreement that Oldcastle would acquire Inland and Pre-con Products, Inc. ("Precon") for approximately $62 million. Plaintiffs present sufficient evidence that Oldcastle initially suggested allocating $27,607,000 for the purchase of the stock of Inland Inc., but that the Kraft Defendants told Oldcastle to reduce its $27,607,000 allocation by $3,000,000 so that the difference could be put into a "Reserve" for the benefit of the Kraft Defendants and one of their other clients. [citations omitted] *Kraft did not inform Trustee Saakvitne of these facts and had Kraft done so, Saakvitne would not have agreed that the purchase price could be reduced by $3,000,000 for a "Reserve."* Saakvitne Decl. ¶ 13.

*Plaintiffs also present sufficient evidence that on July 27, 2007 Kraft received from Oldcastle a letter of intent offering a net purchase price* for Inland ESOP's shares of Inland Inc. of $25,440,000, which required only $3,000,000 cash in the company at closing.

*Kraft did not provide a copy of, or otherwise disclose to Inland, the Oldcastle-Inland LIO [Letter of Intent] or its content or the substance of the July negotiations. Instead, Kraft created and presented his own letter of intent for the transaction, changing the material terms of the Oldcastle-Inland LOI by (I) reducing the net purchase price from $25,440,000 to $24,607,000; and (ii) increasing the amount of cash and liquid investment in*

*the company required at closing from $3,000,000 to $4,890,000 in cash and $414,000 in other liquid investment for a total of $5,304,000.*

*These changes to the Oldcastle-Inland LOI ... had the net effect of creating a deal that was $3,000,000 worse for Inland ESOP. Kraft made the changes for the purpose of removing $3,000,000 from the purchase price of Inland ESOP's stock and moving it to the "Reserve."*

Doc 247 at 4 (emphasis added, other internal citations omitted, paragraph breaks added). **The Court further found that the plaintiffs would not have entered into the transaction under the terms they did, if the Kraft parties had honored their fiduciary duty to provide full and honest disclosure to plaintiffs:**

* * * Had Kraft informed [Inland ESOP Trustee] Saakvitne that he [had] altered the Oldcastle-Inland LOI to the detriment of Inland ESOP for the purpose of establishing a $3,000,000 "Reserve" not solely for the benefit of Inland ESOP, Saakvitne would not have agreed that $3,000,000 or any other amount could be taken from the purchase price for Inland ESOP's stock for the financial benefit of Precon and Kraft Americas. Saakvitne would have insisted that the Kraft Defendants present to him the actual Oldcastle-Inland LOI for his review and consideration.

Doc 247 at 5 (record citations omitted). **The Court then found that the plaintiffs relied to their detriment on the incomplete and inaccurate information provided to them by the Kraft parties:**

On August 16, 2007 [Inland ESOP Trustee] Saakvitne signed the Kraft LOI, relying on Kraft's statements that Kraft was "working for Inland Concrete Enterprises, Inc. in this transaction trying to get the highest and best value for Inland and its shareholders." Oldcastle signed the Kraft LOI on or about August 21, 2007.

On October 23, 2007, Trustee Saakvitne negotiated the final deal terms at a meeting with Oldcastle *based on the information he had at the time.* The $24,607,000 purchase price stated in the Kraft LOI was reduced by $400,000 representing Oldcas-

tle's estimate of a tax liability, and by and [sic] additional $207,000 representing an adjustment to value of certain deeds of trust. On or about December 17, 2007, the Transaction closed for a purchase price of $24,000,000, . . . .

Doc 247 at 5 (citations omitted). The Court determined that "Plaintiffs would have achieved a $3,000,000 higher purchase price but for the wrongful acts of the Kraft Defendants. . . ." *Id.* at 6. That was because, due to the actions and omissions of Kraft and KALP, "Plaintiffs . . . did not know of the $3,000,000 additional benefit they could have received from the Transaction," and "the benefit would have been achieved if Plaintiffs had been informed of Oldcastle's initial valuation and initial LOI [Letter of Intent]." *Id.* at 6.

The Court declined, however, to award punitive damages to Inland. *See* Doc 247 at 7 (citations omitted)

THE TERMS OF THE JUNE 22, 2011 DEFAULT JUDGMENT AGAINST KRAFT AND KALP

Also on June 22, 2011, the Court entered default judgment (Doc 247) holding Kraft dnd KALP jointly and severally liable for $3 million in compensatory damages pursuant to FRCP 55(b)(2). On claim one, by Inland, Inc. alone, the Court declared that Inland, Inc., never hired the Kraft parties and never agreed orally or in writing to pay them; that the Kraft parties provided *no* services to Inland, Inc., in connection with the transaction; and that Inland and was not liable to the Kraft parties. *See* Doc 248 at 2 ¶¶ 2a-2c.

The Court did find that Kraft and KALP rendered brokers services in connection with the transaction, *see* Doc 248 at 2 ¶ d, but held that Kraft and KALP "acted unlawfully when it/he rendered broker's services" because neither had a real-estate broker or securities broker-dealer license as required by California statute before, during, or after the transaction, Doc 248 at 2-3 ¶¶ 2d-2f. Consequently, the Court determined that "any express or implied agreement for such a fee [broker's fee] is void and both" KALP and Kraft "are barred from recovering a fee from Inland,

Inc. in connection with the . . . Transaction", Doc 248 at 3 ¶ 2f.

The Court considered whether Kraft and KALP might be entitled to compensation as "finders" but found they "did not render the limited services of a finder" under state law because their "actions extended far beyond simply introducing Oldcastle and Inland ESOP and included, among other things, 'running this transaction [KALP's and/or Kraft's] way' " and " 'handl[ing] the negotiations between the parties' ", Doc 248 at 3 ¶ 2h.

The Court also declared that any claims which KALP and Rune Kraft might have had against Inland, Inc., for compensation in connection with the transaction were barred by the two-year statute of limitations set forth in Cal. Code Civ. Pro. § 339 subdiv. 1; and were barred because both the Kraft parties "had multiple undisclosed conflicts of interest", breached their duties of undivided loyalty, and breached their fiduciary duties to Inland, Inc., by failing to disclose material facts to Inland, Inc. *See* Doc 248 (Judgment) at 3-4 ¶¶ 2h-2i.

On claim two, asserted by Inland ESOP and its Trustee, the Court made similar declarations. *See* Doc 248 at 4-5 ¶¶ 3a-g. Because the Court found Inland ESOP was an "employee benefit plan" and the Kraft parties were "parties in interest" as defined by ERISA, the Kraft parties' relationship to Inland ESOP and its Trustee were subject to the prohibited-transaction rules in 29 U.S.C. §§ 1106(a) and 1108. *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" and "welfare plan") and (3) ("employee benefit plan") and (14) ("party in interest"). Applying those rules, the Court declared that "the $5 million fee demanded by" KALP was "beyond the realm of a reasonable fee in the industry." The Court found that the $5 million fee demanded "would reduce the proceeds of the sale to the Inland ESOP participants substantially below the fairness level determined by BCC [Valuation Services]." In turn, that would render payment of KALP's requested fee a void or voidable transaction subject to disgorgement. *See* Doc 248 at 6-7 ¶ 3i (cite omitted).

POST-JUDGMENT PROCEEDINGS

On August 1, 2011, plaintiffs filed a Local Civil Rule 7-9 notice noting that the Kraft parties had failed to file any opposition to the fee motion by the deadline, which had elapsed. On August 2, 2011, this Court issued an order (Doc 256) treating as unopposed and granting plaintiffs' renewed motion for $552,623 in fees and costs. Kraft and KALP did not move for reconsideration of the default judgment or the fee award. Nor did they file a notice of appeal, a motion to extend appeal time, or a motion to re-open the time for filing a notice of appeal.

**Nearly four years after entry of judgment, Kraft filed the instant motion for relief from judgment pursuant to FRCP 60(b).** Pursuant to Fed. R. Civ. P. 78 and C.D. Cal. LCivR 7–15, the Court finds this motion suitable for determination without oral argument. **The Court will dismiss the motion for relief from judgment on two grounds. First, a party who fails to appeal from a judgment is presumptively barred from later seeking relief from that judgment pursuant to FRCP 60(b). Second, the motion is untimely under FRCP 60( c), and a district court lacks jurisdiction over an untimely FRCP 60(b) motion.**

JUDGE WILSON DENIES RUNE KRAFT'S MOTION TO DISQUALIFY THE UNDERSIGNED

On July 20, 2015, Kraft filed a Motion for Change of Assigned Judge, which was construed as a motion to disqualify the undersigned. Kraft's motion was randomly assigned to District Judge Wilson (Doc 282), who issued an order on July 28, 2015 denying it. Judge Wilson found that "Kraft's arguments do not reveal any impropriety cognizable on a motion to recuse" and further that "[n]othing about Judge Fairbank's memory or medical history bears on the appearance of impartiality." Doc 283 at 2. Moreover, Judge Wilson concluded,

the record contradicts Kraft's contentions. Although Kraft maintains that Judge Fairbank cannot remember basic facts or legal precepts, her rulings reflect a thorough understanding of the case and careful application of the law. She issued reasoned, even-handed orders on several contested motions. Sometimes her rulings favored Kraft; sometimes they went against him. But they always demonstrated facility with the facts of the case as well as the applicable law. There is, in short, no evidence suggesting that Judge Fairbank cannot fairly and competently adjudicate the case before her.

Doc 283 at 2-3 (internal citations omitted).

KRAFT'S FIRST GROUND FOR RELIEF FROM THE 2011 JUDGMENT

In his motion for relief from the June 2011 judgment, filed four years after that judgment issued, Kraft seeks to re-open the case. By this Kraft apparently means vacate the default judgment, proceed to dispositive motions and, if appropriate, trial. He may also be seeking sanctions against plaintiffs and their counsel.

**First, Kraft asserts that the judgment must be vacated because the undersigned was impaired because she "was undergoing treatment for brain cancer while presiding over the case."** Doc 271 at 3 ¶ 1. Citing www.cancer.org, Kraft states that "the effects of the illness and the treatment" generally include memory lapses, trouble concentrating, short attention span and "spacing out", trouble remembering details, "[t]rouble multi-tasking, like answering the phone while cooking, without losing track of one task", taking longer to finish things, being disorganized, thinking more slowly, and trouble remembering words. Doc 271 at 3 ¶ 2.

**Kraft provides examples of how the medical condition (or treatment), in his opinion, affected the conduct or outcome of this case.** See Doc 271 at 4-7 ¶¶ 4-15. For example, Kraft alleges that because of a medical condition and treatment, the undersigned had trouble remembering "details related to the acceptance of jurisdiction based on specific sworn in facts [sic] by Rune", such as the number and identity of the general and limited partners in KALP (*id.* at 4 ¶ 4); "details related to the fact that Vicarea Real Estate, Inc. was a licensed California real estate broker" (*id.* at 4 ¶ 5); "details related to the fact that no broker agreement had been entered into" (*id.* at 4 ¶ 6); "details

related to the law in California which requires a broker agreement to be in writing" and what type of terms such a writing must contain (*id.* at 4 ¶ 7); "details related to the fact that [KALP] and Vicarea Real Estate, Inc. sent a book account stated based upon an account in writing to ... Inland, Inc.... reflecting the work performed", "not for brokerage services but rather research and analysis done for Inland, Inc. about construction materials markets, products, and companies" (*id.* at 4–5 ¶ 8).

Kraft also asserts that the undersigned "forgot or ignored a book account stated based upon an account in writing" (Doc 271 at 5 ¶ 11) and "did not comprehend, ignored or forgot the basics of how American companies do business", namely that "American companies hire employees and contractors to create value; i.e., to make sure customers are satisfied; to find the next big product; to create the best service etc" (*id.* at 5–6 ¶ 12).

Kraft further asserts that the undersigned judge "did not comprehend, ignored or forgot the particulars of this matter", Doc 271 at 6 ¶ 13, and he proceeds to describe the version of events which this Court should have accepted and the conclusions this Court should have drawn from that version of events. *See id.* at 6–7 ¶ 13 (describing the nature, scope, and value of the work that KALP and Vicarea Real Estate, Inc., allegedly performed for Inland, and the benefits that Inland and its owners allegedly derived from that work).

**Kraft fails, however, to cite any passage from any order of the Court in this case, or a transcript of any in-court proceeding held in this case**, to substantiate any such instance of a judicial officer's failure to comprehend or remember. Much less has Kraft provided citations to the record, and accompanying analysis, to substantiate his theory

---

3. Kraft's opening brief asserts that the undersigned judge "forgot or ignored that Rune Kraft did not receive motions, rulings and/or orders and that he had expressly informed her that he had not received any court filings since March 9, 2011." *See* Doc 271 at 7 ¶ 14. But that paragraph does not specify *when* Kraft allegedly filed a document stating that he had not been receiving copies of documents filed by the Court or by the plaintiffs. Nor does Kraft explain how he was prejudiced by allegedly not receiving any particular document.

that the judge's alleged difficulty comprehending or remembering led to some erroneous legal conclusion or factual finding, or some denial of his rights to due process of law [3] and an impartial tribunal.

◼ Moreover, "[a]s Judge Kozinski observed in *United States v. Washington*, 98 F.3d 1159 (9th Cir. 1996), ...: Disability, mental or physical, is not one of the grounds enumerated in sections 144, 455, or any other [federal] statute; it is, therefore, not a proper basis for seeking a judge's recusal." *Peterson v. U.S.*, 2006 WL 2252862, *7 (D. Utah May 1, 2006) (quoting *State of Wash.*, 98 F.3d at 1164–65 (Kozinski, J., concurring)), *aff'd*, 239 Fed.Appx. 428 (9th Cir. 2007).

## KRAFT'S SECOND GROUND FOR RELIEF FROM THE 2011 JUDGMENT

**Kraft's second basis for relief from judgment is the allegation that "Evidence Was Forged", and that the forgery of evidence constituted obstruction of justice in violation of 18 U.S.C. sections 1503, 1512, 1513, and 1962.** *See* Doc 271 at 7 (section heading). According to Kraft's reply (Doc 293 at 7), "plaintiffs' attorneys weren't deceived but decided to deceive the Court and Deceived the Court."

Under the heading "Deception—Undisclosed Conflicts", Kraft alleges that he, "on behalf of the corporate entities, explained to [plaintiff] ... Saakvitne (attorney, officer of the court, Inland ESOP's investment advisor, special trustee and de facto broker) the proposal and Saakvitne clearly understood." *See* Reply (Doc 293) at 7. Kraft quotes a purported September 17, 2007 e-mail from Saakvitne, presumably sent to Kraft, as follows:

[Y]ou have explained to me that your proposal provides for 100% of such increases

Specifically, Kraft does not allege that he or his counsel did not receive all filed documents in time to prepare meaningful briefs and argument with regard to default, or with regard to plaintiffs' subsequent motion for default judgment. Nor does Kraft show that he or his counsel were deprived of timely access to filed documents sufficient to enable him to challenge some other ruling in this case.

to be paid to your firm, because any such increase in the $24,607,000.00 purchase price (apart from the balance sheet adjustment described above) will be attributable to the value added by the multiple company package you have assembled for Oldcastle (of which the ESOP's stock represents 25% of [sic] less), not to additional intrinsic value in the ESOP's shares[.]

Kraft's Reply (Doc 293) at 7. Under the heading "Deception—Confusion", Kraft alleges that "Saakvitne just didn't accept the proposal—and neither did the other side (see attached declaration Exhibit 4):

Representations made to BCC Valuation Services Letter and opinion issued by BCC Valuation Services referring to an agreement to pay Kraft Americas, L.P.—December 7, 2007

"[T]he client negotiated a compensation agreement with Kraft Americas, L.P. ("broker") for its role in brokering and structuring the stock sale on behalf of the selling shareholder. Under the proposed agreement, the selling shareholder will receive the first $23.0 million of available stock sale proceeds; the broker will receive the next $1.6 million, and; the selling shareholder and the broker will divide equally the remaining sale proceeds."

Kraft's Reply (Doc 293) at 8. Kraft's next reply section, "Deception—Protection from Their Own Acts", focuses on Kraft's conception of a "market-maker" as opposed to a "fiduciary." It provides in its entirety as follows:

6. Courts are not intended to be used to extend protection so that one first can engage in certain acts and then afterwards, if the result is not as desired, ask the court to issue protection from the acts—for example note one of California's Maxims of Jurisprudence—Civil Code 3517 "no one can take advantage of his own wrong".

7. For example, if somebody buys shares at any stock exchange and the shares subsequently decline in value, is the stock exchange at fault? For good reason, such protection has never been extended to anybody. A market maker's role is to offer prices at which a client may buy or sell a given asset, and an investment advisor's role is to act in the interest of the client as a fiduciary.

8. Kraft Americas, L.P. and Vicarea Real Estate, Inc. (hereinafter Kraft) [sic] was a market-maker, not a fiduciary. Inland wanted Kraft to be a market-maker, not a fiduciary. Inland hired an investment advisor to act in the interest of the client as a fiduciary. Inland hired legal counsel, an accounting firm, a valuation firm and several real estate appraisers to act in the interest of the client as a fiduciary. The investment advisor or special trustee even acted as a "broker" and represented that he dealt with "four other buyers."

9. The work that Kraft performed from 1998 to 2007—Kraft's research, analysis, information, ideas, strategic plans and tactical plans related to the creation of a dominant precast group—created a market for Inland. Inland ... had a demand for $20,690,000 (the intrinsic value of the ESOP's shares) and Kraft offered ... $20,690,000 (the intrinsic value of the ESOP's shares).

Oldcastle Precast, Inc. had a demand for the creation of a dominant precast group and Kraft offered a multiple[-]company package assembled by Kraft.

The Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan (and Inland Concrete Enterprises, Inc.?) asks the court to protect it from having a demand for $20,690,000 (the intrinsic value of the ESOP's shares) reasoning that Kraft's research enabled Oldcastle to value Inland at $55.7 million—$79.5 million immediately following the transaction. In other words, the court should protect the ESOP because: (a) the value of Kraft's research was so high; (b) the ESOP's demand did not incorporate the value of Kraft's research; ( c) the ESOP is not going to benefit any further from Kraft's research (other than having its demand of $20,690,000 met) so Kraft should not be paid for his work. This is wicked. (That the opposing side—see first claim for relief—includes Inland Concrete Enterprises, Inc. is perverse.)

Kraft's Reply (Doc 293) at 8-9 ¶¶ 6-9 (paragraph nine internal break added).

Under the heading "But He Isn't Wearing Anything At All!", Kraft asserts that plaintiffs have yet to introduce "any evidence that a transaction actually occurred on December 17, 2007", and "[t]he record ... in this case does not contain a transaction document." Reply (Doc 293) at 9 ¶¶ 10 and 12. Kraft goes on to explain that he "discovered on July 21, 2013, during discovery in another legal proceeding and discovery that is the subject of a protective order, a copy of an alleged signed document related to a transaction on December 17, 2007 ('the Stock Purchase Agreement['] that was allegedly entered into between Inland, Inc., the Inland ESOP and Oldcastle on December 17, 2007)", Doc 293 at 9 ¶ 11 (note 2 citing Kraft Dec (Doc 15) ¶¶ 56-79). That document, says Kraft, "names Rune Kraft as the Broker in 'Schedule 2.5 Brokers'", Doc 293 at 9 ¶ 13.

**Kraft then appears to allege that plaintiffs merely pretended to hire him or sometimes falsely claimed for self-serving reasons that they had hired him as a broker for the transaction.** Kraft states that

> Rune Kraft "was hired" as a broker by way of being named as a broker in an exhibit of a clandestine document allegedly dated and signed by Plaintiffs on December 17, 2007; whilst never actually informing him that they had hired him as a broker and what he was going to be paid, let alone if he agreed to serve as a broker, and without inviting him to take any part in the closing of the transaction and never actually providing to him the transaction document that he was allegedly responsible for; and despite allegedly having hired him to be the broker, ... offered to hire Vicarea Real Estate, Inc. as the broker. This would appear to be a chaotic, if not plainly illegal, way of hiring anybody and particularly somebody hired for the purpose of serving in a role with fiduciary duties.... [T]hese practices of hiring contractors and/or employees are illegal and Plaintiffs' attorneys knew they were illegal.

Doc 293 at 10 ¶¶ 15-16 (n.3 citing, *inter alia*, Kraft Dec (Doc 15) ¶ 27). According to Kraft, plaintiffs, "[k]nowing [they] had never offered to hire Rune Kraft for anything—including a broker or any other fiduciary capacity; never hired him; never employed him ...; [and] never paid him", nonetheless "wrapped themselves in the flag of the employee stock ownership plan and filed [this] lawsuit ... claiming to have been hurt by Rune Kraft because he was acting for them in the capacity of a fiduciary and that ... despite his 'bad work for them as a fiduciary', was now demanding to be paid." Doc 293 at 11 ¶ 17 (n.4 citing, *inter alia*, Doc 15 ¶ 15).

Kraft charges that plaintiffs' counsel "systematically used acts and statements in interacting with the court to perpetuate this fraudulent scheme. And the judicial officers were either impaired, misled or decided to join in the conspiracy and continued to perpetuate this fraudulent scheme on the court." Doc 293 at 12 ¶ 19; *see also id.* at 12–13 ¶¶ 20–22. Specifically, Kraft explains,

> The purpose was to deceive the court's records [sic] in a manner that would prevent [Kraft] from fully and fairly presenting his case [counterclaim] or defense. It was essential to [Kraft]'s case to show that he was not a party to any of the documents and that Vicarea Real Estate, Inc. was a party to the documents as he performed his work as a duly authorized representative of Vicarea. The acts and statements [of counsel] were part of an overall scheme to establish a fiduciary relationship without having one ... when such a relationship had never even been discussed.

Reply (Doc 293) at 24 ¶ 66.

KRAFT'S CHARGE THAT INLAND FALSELY ACCUSED HIM OF SPOLIATION

**Kraft alleges that Inland made or caused to be made false and misleading representations regarding six electronic documents Kraft delivered to their lawyers' assistant on November 15, 2010,** *see* Doc 271 at 7 ¶ 16. Kraft names plaintiffs' counsel and plaintiff-trustee Saakvitne, a California-licensed attorney, as the perpetrators of the alleged fraud on the court, including perjury. *See* Doc 293 at 13-14 ¶¶ 24-36.

According to Kraft, "[t]he six electronic files showed the true times that the authorized representative of Vicarea Real Estate,

Inc., Rune Kraft, had: created, modified, accessed and printed the six electronic documents and that the authorized representative had: created, modified, accessed and printed the six electronic documents contemporaneously, as he actually performed the tasks", Doc 271 at 7-8 ¶ 16.

Kraft elaborates, in part, that "[t]his CD was ordered by the Inland ESOP and Inland, Inc. as part of discovery", that he "swore under penalty of perjury that the facts contained on the CD were true", and that "[t]he CD did not reflect any of the 'shenanigans' that the Inland ESOP and Inland, Inc. would portray to the court 2.5 months after they received it", Doc 271 at 8 ¶ 16.

Kraft proceeds to describe in detail the misrepresentations Inland allegedly made as to each document, see Doc 271 at 9-13. **According to Kraft, Inland's attorneys requested discovery from Kraft and KALP, received a CD containing the evidence, including the six Microsoft Word files, by personal delivery by Rune Kraft on November 15, 2010, and then either caused the metadata of the six Microsoft Word files to be forged, forged the metadata of the six Microsoft Word files[,] or knew that the metadata of the Microsoft Word files were forged. After the fabrication of evidence**—implicating [Inland's attorneys], as they received the evidence, had a duty to investigate the evidence, had custody over the evidence, had a duty to preserve the evidence and under no circumstances forge the evidence or take part of a scheme to forge the evidence— on January 30, 2011 caused Salsig to swear in statements and Salsig swore in statements, under penalty of perjury—[Doc 126-2 at 1-4 and Doc 126-3 at 1-7]—that deceived the court by falsely stating that their investigation had uncovered that six electronic documents were "Modified" 4 hours before they were "Created" by Rune Kraft and "Accessed" about 3.5 years after they were last "Modified" and "Printed" by Rune Kraft[,] and Plaintiffs' attorneys['] acts and statements found their way into rulings by the court[.] [citing Salsig Dec—Ex F (Requests for Production No. 15—No. 26) ] * * *

Doc 293 at 15-16 ¶ 37. Kraft notes characteristics that he says are "universal to the six forged electronic documents", Doc 271 at 14 ¶¶ 36-42, then describes how plaintiffs benefitted from the alleged forgery and mischaracterization, Doc 271 at 14-15 ¶¶ 43-46 and 15-16 ¶¶ 52-55. "The forgeries," Kraft asserts, "were used to threaten and extort and make the court do their bidding." Doc 293 at 17 ¶ 41.

Ultimately, Kraft charges, "[t]he public recordings [sic] portraying Rune Kraft as a forger were obtained based on acts and practices that were criminal and were criminally derived", Doc 271 at 17 ¶ 63. His allegations are less than clear. Kraft alleges that "Inland ESOP and Inland, Inc. did not disclose to, and actively concealed from, the public, the court and others the fact that pseudo legal proceedings [sic] at the court created sham judgments and claims against [Kraft and KALP]", Doc 271 at 16 ¶ 58. In this paragraph, Kraft does not identify the cases in which the so-called "sham judgments" against him and/or KALP had been won.

Kraft further alleges, unclearly, that "[i]n public recordings, the Inland ESOP and Inland, Inc. and others reported that they had obtained judgments against Petitioners and that Petitioners were their pawn" and that "the public recordings were used by the Inland ESOP and Inland, Inc. and others to portray Rune Kraft as a person with bad character that [sic] could not be trusted", Doc 271 at 16 ¶¶ 50-60. In this paragraph, Kraft does not identify the "public records" in question.

**Kraft argues that if the Court had the true facts, including dates and times when the documents had been created, modified, and accessed, the Court would have found it "had no authority to re-organize [KALP] and/or appoint, whether retroactively or otherwise, its General Partner", that Vicarea Real Estate, Inc. was a California licensed real estate broker", and that Vicarea "performed all work related to this matter as the General Partner of [KALP] and as a stand-alone entity", Doc 271 at 15 ¶¶ 47-50.**

Furthermore, Kraft argues, if the Court had the true facts about the six electronic documents, the Court also would have realized that "Kraft had never done any business with the Inland ESOP and Inland, Inc. in his personal capacity (as an individual) and had at all times acted as an authorized representative of [KALP]'s General Partner Vicarea Real Estate, Inc. (a Delaware corporation) that was a licensed California real estate broker", Doc 271 at 16 ¶ 61. Finally, the Court would have found that Kraft had "never offered to do any work for the Inland ESOP and Inland, Inc., never performed any work for them, never asked for any considerations of any kind from them and never received any consideration of any kind from them", Doc 271 at 16-17 ¶ 62.

Ground 2B for Rule 60(b) Relief: Inland Fabricated Evidence and Made False Statements to the Court

**Kraft also charges that "as part of the scheme, Plaintiffs' attorneys fabricated information about one of the Defendant Kraft Americas' [sic] vendors," Justicia,** stating that the vendor was used by Kraft Americas in February 2008 was dissolved in 2003 when the vendor is an active corporation in good standing...." Doc 293 (Kraft Reply) at 16 ¶ 38. Kraft charges that Inland's counsel made false statements about Justicia's statutory agent and the Court relied on those statements in at least one ruling: the Court cited defense counsel Salsig's declaration etc. for its statement that "Justicia, Inc. was dissolved in 2003, over five years before the purported facsimile; Justicia also lists Laverne Guthrie as its statutory agent, and Kraft testified that Laverne Guthrie is a director of Vicarea [Real Estate]." Doc 293 at 16 ¶ 38.

Kraft's Third Ground for Rule 60(b) Relief from the 2011 Judgment

**Kraft's third ground for relief is that "Evidence was Withheld",** constituting obstruction of justice in violation of 18 U.S.C. §§ 1503, 1512, and 1513. Generally, het alleges that "[a]s part of their work to do research and analysis for Inland, Inc. about construction materials markets, products, and companies[,] Kraft Americas, L.P. and Vicarea Real Estate, Inc. did not get access

to the deal documents that the Inland ESOP, Inland, Inc., and Oldcastle signed related to the transaction between Inland, Inc., the Inland ESOP [sic, sentence ends here]." Doc 271 at 17 ¶ 64. **"It was not until discovery in another legal proceeding by Kraft Americas, L.P. against Oldcastle that [KALP and Kraft] discovered" six electronic documents or e-mails:**

— a December 7, 2007 BCC Valuation Services letter to Inland ESOP listing KALP as "the broker";

— apparently two versions of a December 17, 2007 Stock Purchase Agreement, one referring to "brokers to be listed in schedule 2.5" and the other listing Rune Kraft as a broker in schedule 2.5;

— a January 15, 2008 letter from Inland ESOP to Oldcastle that referred to "claims by Rune Kraft", "liability to Rune Kraft", and "proposed fees to Rune Kraft";

— a March 7, 2008 e-mail from Inland ESOP to Oldcastle that referred to "[Rune] Escrow", "Rune Escrow", the "Rune claim" and a "Rune Kraft claim"; and

— a September 11, 2008 e-mail from Inland ESOP which referred to a "Rune Kraft claim."

Doc 271 at 17 ¶ 65. **According to Kraft, "these six documents were not disclosed in this case and go to the core of this case." Doc 271 at 17 ¶ 66. Kraft asserts that, contrary to the information in those six allegedly withheld documents, Inland and its ESOP had no contacts with "the individual Rune Kraft** (who is an authorized representative of Vicarea Real Estate, Inc., the General Partner of Kraft Americas, L.P.)"; Inland and its ESOP never proposed to enter into any contract with the individual Rune Kraft; Inland and its ESOP never paid or proposed paying the individual Rune Kraft; and Rune Kraft "in his capacity as an individual" never asked to be paid, never asked to enter into a contract, and never did business with any party, Doc 271 at 18 ¶¶ 69-70.

According to Kraft, Oldcastle is "attempting to extort money based on this conduct in a fraudulent 'round trip' transaction." Doc

271 at 19 ¶ 74. Kraft explains that "[d]uring discovery ... in the aforementioned active legal proceeding by [KALP] against Oldcastle, [KALP and Kraft] found evidence of the following: ...." Doc 271 at 19 ¶ 74. He describes the fraudulent "round trip" transaction allegedly attempted or intended by Oldcastle:

(1) Oldcastle buys Inland, knowing Inland owes KALP and Vicarea Real Estate for services rendered;

(2) Rather than causing Inland to pay, Oldcastle selectively leaks trade secrets and confidential information to Inland ESOP and the two develop a fraudulent scheme; and

(3) "Inland ESOP assigns back to Oldcastle the 'winnings' as this will enable Oldcastle to use the scheme in an effort to run an extortion scheme to avoid the obligations."

Doc 271 at 19 ¶ 74.

Kraft's fourth ground for FRCP 60(b) relief is that "The Buyer Selectively Leaked Trade Secrets and Confidential Information to the Seller in Violation of a Confidentiality Agreement." Doc 271 at 20. Kraft alleges details of the violations, as well as their "corrupt intent" and purpose, in Doc 271 at 19-20 ¶¶ 75-81.

Kraft's Fifth Ground for Relief from Judgment appears to be that Inland misled the Court about the identity of the defendant and refused to correct the error to have a summons issued to the correct defendant. See Doc 271 at 20. Kraft complains that he was named as General Partner of KALP, which he has never been, and when none of the documents exchanged, "including the proposal issued and made by Inland, Inc., Oldcastle and the Inland ESOP to retain Vicarea Real Estate, Inc. as a broker the day after the transaction's close, had Rune Kraft as a party to the contract." Doc 271 at 22 ¶¶ 82-83. According to Kraft, Inland was notified on three occasions—June 8, 2006, May 16, 2007, and August 1, 2007—that Vicarea was General Partner of KALP. Kraft alleges that someone further communicated to Inland on March 17, 2010 that "Kraft is not the General Partner of Kraft Americas, L.P."

and "[I or we] urge you to correct this error immediately", Doc 271 at 22 ¶¶ 86-87.

Kraft's Sixth Ground for relief from judgment seems to be that plaintiffs filed a complaint (about six years ago) "built on a series of falsehoods", Doc 271 at 22. By Kraft's reckoning, the complaint contained a total of 85 factual statements: 51 false statements, 28 deceptive statements, two statements which "make no sense", and 4 statements that are true but not material. See Doc 271 at 22 ¶¶ 88-89.

Kraft charges that exhibits 42 and 43 to the Trustee's declaration contained "false statements, perjury, subornation of perjury, obstruction of justice, conspiracy, wire fraud, and mail fraud[.]" Doc 271 at 23-25. Kraft further charges, without explanation or citation to the record, that Inland "fabricated an e[-]mail Ex[.] 130 shown to Rune Kraft during a deposition on February 24, 2011", Doc 271 at 25 ¶ 94. Finally, he charges that Inland

> made a filing with the court stating that a vendor used by [KALP] in February 2008 was dissolved in 2003 and made false statements about the statutory agent of the vendor (Justicia), when in truth and in fact the corporation (Justicia) was ad continues to be [a] corporation in good standing and having a qualified registered agent (Corporate Service Center). The Inland ESOP and Inland, Inc. knew that this was false and this fraud upon the court was again done to make sure that the court did not have the true facts.

Doc 271 at 25 ¶ 95.

Kraft concludes his opening brief with a Prayer for Relief asserting that the court has power to grant relief from judgment pursuant to FRCP 60(b)(4) because the judgment is void, 60(b)(5) because prospective enforcement is no longer equitable, and 60(b)(6) for "any other reason that justifies relief." Doc 271 at 29; see also Doc 293 at 26 ¶ 70. He ends by stating that "[p]ursuant to Federal Rule 60(d) the court has powers to grant relief based on fairness, due process, equal protection, equity and/or fraud upon the court", id.

In his reply, Kraft appears to contend that the 2011 Judgment was internally inconsistent and inconsistent with record evidence, and that those errors and infirmities resulted from plaintiff counsel's alleged fraud on this Court. *See* Doc 293 at 17 ¶ 43 ("The contradictions in the ruling are the symptoms. The causation is the fraud on the court."). **As examples, Kraft argues as follows:**

44. In paragraph 2.h the document [the Judgment?] states that there were was no instrument in writing (California Code of Civil Procedure § 339, subdivision 1 pertaining to an action upon a contract, obligation or liability not founded upon an instrument of writing) whilst in paragraph 2.f the judge describes the services as broker's services, which require an instrument in writing.

45. The records of the court show that there were several instruments in writing but that the instruments in writing related to a broker relationship that was never agreed to.

46. In paragraph 3.a the document states that Defendant has not entered into a binding and enforceable express oral or written agreement, implied in fact agreement, or implied in law agreement with Plaintiff Inland ESOP whilst in paragraph 3.b of the document Defendant has rendered broker's services.

47. In paragraph 3.a the document states that Defendant has not entered into a binding and enforceable express oral or written agreement, implied in fact agreement, or implied in law agreement with Plaintiff Inland ESOP whilst in paragraph 3.d of the document Defendant has rendered broker's services pursuant to an express or implied agreement.

48. In paragraph 3.a the document states that Defendant has not entered into a binding and enforceable express oral or written agreement, implied in fact agreement, or implied in law agreement with Plaintiff Inland ESOP whilst in paragraph 4 of the document Defendant has breached fiduciary duties to Plaintiff Inland ESOP.

49. In paragraph 3.g the document states that Defendant had multiple undisclosed conflicts of interest, breached his duties of undivided loyalty and breached his fiduciary duties owed to Inland, Inc. by failing to disclose material facts to Plaintiff Inland ESOP whilst in paragraph 2.a of the document it states that no services were provided by Defendant to Inland, Inc. and in paragraph 2.b that Inland, Inc. never retained Defendant to provide any services to, or for, Inland, Inc.

50. In paragraph 2.a the document states that no services were provided by Defendant to Inland, Inc. and in paragraph 2.b that Inland, Inc. never retained Defendant to provide any services to, or for, Inland, Inc. whilst in paragraph 2.d of the document it states that Defendant rendered broker[']s services.

Doc 293 at 17-18 ¶¶ 43-50; *see also id.* at 18–19 ¶ 51–53. Per Kraft, the foregoing inconsistencies in the June 2011 decision "perpetuate the fraud on the court" because the Court's records contain evidence as to

[t]he corporate structure of [KALP] and the facts that Vicarea Real Estate, Inc. performed services as both the General Partner of [KALP] and as a stand-alone entity

Vicarea Real Estate, Inc. being a licensed broker in California

Rune Kraft doing his work as the duly authorized representative of two Delaware corporate entities

No broker agreements (which in California must be in writing and signed by all parties)

No broker agreements (which in California is a requirement to establish a relationship enabling broker services to be rendered)

The book account stated based upon an account in writing being issued to Inland, Inc.

The value of the work created by the contractor was distributed to the company.
* * *

* * *

Doc 293 at 19-20 ¶ 54. **At no point does Kraft show that he only recently became aware of these putative bases for attacking the Court's decision. Absent evidence**

to the contrary, the Court finds that Kraft knew these bases for attacking the decision in June 2011, when he still could have filed a timely motion for reconsideration, a timely appeal, or both. Yet Kraft never moved for reconsideration, nor did he appeal.

At most, Kraft might show that while he was aware of all the purported errors in the Court's rulings when judgment issued, it was not until years later that he came to suspect those errors were somehow related to the judge's medical condition or treatment. This provides no justification for Kraft's failure to make these assignments of error on appeal to the Ninth Circuit back in 2011.

ADDITIONAL BASES FOR RELIEF FROM JUDGMENT RAISED OR EXPANDED IN THE REPLY

In his reply, Kraft identifies an additional basis for relief from the 2011 Judgment: he alleges that when this Court granted the motion of KALP and Kraft's counsel to withdraw from representation in March 2011, "[n]ew counsel had already been secured and was never allowed to represent the interests of Defendants and Counterclaimant[,] which prevented the natural person [Kraft] from fully and fairly presenting his case or defense...." Doc 293 at 20-21 ¶ 57 (generally citing Kraft Dec and U.S. Const. Fifth Amendment Due Process Clause). In addition, Kraft now alleges that although plaintiffs' counsel deposed him in his personal capacity for four days, he "requested an opportunity to review the deposition testimony and if necessary make changes, but was never deposition of Rune Kraft Vol I (01.26.11), Vol. II (02.11.11) and Vol III (02.24.11). Rune Kraft has only been shown Vol IV (03.25.11)." Doc 293 at 21 ¶ 59.

The Court finds that Kraft likewise knew of these "new counsel" and "deposition transcript access" bases for challenging the Court's decision no later than when the Judgment issued in June 2011, at the beginning of his time for appeal. *See Giblin v. Sliemers*, 2016 WL 3078741, *2 (D. Colo. May 18, 2016) ("[A] Rule 60(b) motion is not a substitute for direct appeal, .... Advancing new arguments or supporting facts which were otherwise available for presentation'" when issues were briefed pre-

judgment, "'is likewise inappropriate.'") (quoting *Van Skiver v. U.S.*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

Again in his reply, Kraft asserts an additional basis for relief from the Judgment: the Court erroneously conflated him with KALP, holding him responsible for wrongs allegedly committed by KALP. As his first example of this conflation, Kraft alleges that plaintiffs' counsel took advantage of the fact that his "last name is Kraft and ... the limited partnership's name starts with Kraft ... to group the two distinct legal entities together...." Doc 293 at 22 ¶ 61. In turn, the conflation "found its way into orders, including the March 9, 2011 ruling that 'Kraft sent a letter to Plaintiffs demanding payment of $5,000,000'—[Doc 170 at 10]—when in truth and in fact the demand for payment came from [KALP] and Vicarea Real Estate, Inc., as plaintiffs' attorneys and Judge Baker Fairbank knew all along...." Doc 293 at 22 ¶ 61 (citing n.4).

As his second example of the conflation of Kraft with KALP, Kraft states that this Court "would find that the defendant, who did not even own the computer in question, should have saved the computer because the computer was evidence and then went on to refer to cases none of which stated that a computer should be saved...." Doc 293 at 22 ¶ 62. In so doing, Kraft contends, the Court "ignor[ed]" the fact that "Defendant was an officer of a Delaware corporation [KALP] that had issued a corporate policy [he] was required to follow", *id.*

As his third example of the conflation of Kraft with KALP, Kraft takes issue with this Court's statement, in a March 9, *2011* Order, that "the email sent by Kraft to plaintiffs on December 11, 2007 clearly threatened litigation over the fees he claimed to be owed" and with the Court's statement that "Kraft would have known that the documents on [the] Gateway computer that he used would be relevant to his threatened claim for fees; he used the computer to generate his purported proposed fee agreements." Doc 293 at 22-23 ¶ 63 (citing Doc 170 at 10 lines 24-25 and 31-35 (citing Salsig Dec ¶ 8 and Ex E)). Kraft complains that the email actually stated that "*Kraft Americas, L.P.* will make a claim

against any amounts above $20,690,000", not that he, Rune Kraft, would sue to recover such amounts. *See* Doc 293 (Kraft Reply) at 23 ¶ 63 (citing Doc 170 at 6 lines 30-31).

The Court finds that Kraft knew of all these instances of the Court's allegedly erroneous conflation of Kraft with KALP no later than when the Court entered final judgment in June 2011, at the beginning of his time for filing a notice of appeal. *See U.S. v. 2002 Pontiac Bonneville SE*, 2015 WL 8331144, *6 (D.N.M. Dec. 7, 2015) ("*Rule 60(b) 'is not a vehicle* to reargue the merits of the underlying judgment, *to advance new arguments which could have been presented in the parties' original motion papers [before judgment], or as a substitute for appeal.*' ") (quoting *Davis v. Simmons*, 165 Fed.Appx. 687, 690 (10th Cir. 2006)) (emphasis added).

This case was referred to then-Magistrate Judge Parada, but he resigned on June 30, 2014, at the end of his term (three years after the undersigned entered default judgment). *See http://www.uscourts.gov/judicial-milestones/oswald-parada*, last retrieved on August 5, 2016. Because pre-trial proceedings had already concluded, the case has not been referred to any other Magistrate Judge.

## RUNE KRAFT'S "OBJECTION" TO CITATION OF UNPUBLISHED 2016 FEDERAL DECISION

On March 25, 2016, Inland filed a Notice of Ruling in Related Case (Doc 296). The notice advised the Court and Kraft that the Ninth Circuit had issued an unpublished panel decision affirming District Judge Kronstadt's grant of summary judgment to the defense in *KALP v. Oldcastle Precast, Inc.*, 641 Fed. Appx. 718 (9th Cir. 2016) ("*KALP v. Oldcastle*"). The plaintiffs' notice attached a copy of that brief unpublished Ninth Circuit opinion as an exhibit, *see* Doc 296 at 5-8.

On April 7, 2016, Kraft filed a document entitled "Objection" (Doc 301). He complains that his adversaries violated the law by calling the Court's attention to the recent Ninth Circuit decision adverse to KALP in *KALP v. Oldcastle* because that decision was designated as not precedentially binding and not published in the Federal Reporter Third casebooks. Kraft notes that "California Rules of Court 8.1115(e) prohibits courts and par-

ties from citing or relying on opinions not certified for publication or ordered published. Defendant have flagrantly disregarded this rule which has now become prejudicial." Doc 301 at 1.

Similarly, in his Rule 60(b) reply, Kraft alleges that Inland attorney Ryan R. Salsig

> deceived the court by intentionally misquoting to a tribunal the language of a decision applying the case law to facts that the rules of the court explicitly prohibits [sic]. Salsig illegally cited *J. Oliver v. Pacific Real Estate Holdings, Inc.*, referring to the case as 2008 WL 3198223—Cal. App. 2008. This is despite the fact that this case—No. F051193 (Super. Ct. No. 005-213991) is nonpublished / uncitable. California Rules of Court 8.1115(e) prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published. Salsig flagrantly disregarded this rule and Plaintiffs' attorneys acts and statements [sic] found their way into rulings by the court. [citing Doc 270 (Order filed March 9, 2011) at 12]

Doc 293 at 17 ¶ 39.

■ Kraft's objections to the citation of the unpublished Ninth Circuit opinion *KALP v. OldCastle* and the unpublished California Court of Appeal opinion *Oliver* lack merit, however, because "California Rules of Court apply only in state court, not federal court." *Kraft v. Oldcastle Precast, Inc.*, LA CV 15–00701 Doc 44 at 4 (C.D. Cal. Apr. 15, 2016) (citing, *inter alia*, *Hubbard v. Sherman*, 2015 WL 10557486, *6 (C.D. Cal. Dec. 4, 2015), *R&R adopted*, 2016 WL 1180134 (C.D. Cal. Mar. 25, 2016)).

■ " 'Although California Rules of Court, [R]ule 8.1115 prohibits citations to unpublished decisions, a federal court exercising diversity jurisdiction is not bound by a state's procedural rules.' " *Kraft v. Oldcastle Precast, Inc., et al.*, No. LA CV 15–00701–VBF Doc. 44 at 4 (C.D. Cal. Apr. 15, 2016) (not yet on WL) (citing *Widman v. Keene*, 2015 WL 5918396, *3 n.5 (D. Utah Oct. 9, 2015) (citing, *inter alia*, *Siteworks Solutions, Inc. v. Oracle Corp.*, 2010 WL

890941, *2 n.8 (W.D. Tenn. Mar. 9, 2010) ("Rule 8.1115(a), however, is a procedural rather than a substantive rule of law.")) and *Baltazar v. Yates*, 2010 WL 2195979, *11 n.8 (C.D. Cal. Apr. 28, 2010) (Fairbank, J.) (acknowledging that state court rule prohibited citation of unpublished Cal. Court of Appeal opinions but noting, "California's Rules of Court also are not binding on this federal Court")).

**Kraft fails to identify any *Federal* Rule, Circuit Rule, or Local Rule, that was violated by his adversaries' citation of an unpublished *federal* decision *issued in 2016*.** Circuit Rule 36-3 subsec. c substantially restricts citation "to the courts of this circuit" of unpublished dispositions and orders of the Ninth Circuit issued *before 2007*. By contrast, Circuit Rule 36-3(b) provides, in its entirety, "Unpublished dispositions and orders of this court issued on or after January 1, 2007 *may be cited* to the courts of this circuit in accordance with FRAP 32.1." In turn, FRAP 32.1 provides that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been (I) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."

**Consequently, Kraft's adversaries did not violate FRAP 32.1, Ninth Circuit Rule 36-3, or any other law by citing an unpublished 2016 Ninth Circuit decision in their February 25, 2016 filing (Doc 296).** *See, e.g., Dewey v. City of Los Angeles*, 2014 WL 5464901, *4 (C.D. Cal. Oct. 27, 2014) (unpublished Ninth Circuit order issued in 2014 was "now citable for its persuasive value pursuant to Ninth Circuit Rule 36–3"); *Smith v. Sanders*, 2009 WL 2900317, *5 n.7 (C.D. Cal. Sept. 3, 2009) ("The Court may cite unpublished Ninth Circuit decisions issued on or after January 1, 2007.") (citing Fed. R. App. 32.1(a) and 9th Cir. R. 36–3(b)).

**"Finally, our Court's Local Civil Rule 11-3.9, Citations, does not purport to restrict the right of judges or parties to cite unpublished decisions."** *Kraft*, LA CV 15–00701–VBF Doc. 44 at 5 (not yet on WL).

**In any event, according to the certificate of service (Doc 38 at 3), defendants also mailed Kraft a copy of *KALP v. Oldcastle*.** That was more than required by FRAP 32.1(b), which provides only that "[i]f a party cites a federal judicial opinion . . . *not available in a publicly accessible electronic database*, the party must file a serve a copy . . . with the brief or other paper in which it is cited." Emphasis added. Nothing suggests that *KALP* was not available to Kraft "in a publicly accessible electronic database", e.g., WestLaw or Lexis.

Independently, Kraft argues that *KALP v. Oldcastle* is distinguishable from this case because it was "about breach of a confidentiality and no-use agreement and misappropriation of trade secrets." Doc 43 at 1-2. This objection is unavailing, because the Court did not rely on *KALP v. Oldcastle* in reaching today's conclusion that Kraft's motion for relief from judgment is untimely and barred by his failure to appeal.

<u>ANALYSIS: RULE 60(b)(3) MOTION IS BARRED BY FAILURE TO APPEAL THE JUDGMENT</u>

■ "A court of appeals typically can remedy a legal error committed by a district court", *Glacier Elec. Coop., Inc. v. Gervais*, 2015 WL 5437615, *2 (D. Mont. Sept. 15, 2015), and FRCP 60(b) is not meant to be a substitute for an appeal. *See U.S. v. N.E. Med. Servs., Inc.*, 2016 WL 627417, *3 (N.D. Cal. Feb. 17, 2016) (citing *20th Century–Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338 (9th Cir. 1981)); *accord Borne v. River Parishes Hosp., LLC*, 548 Fed.Appx. 954, 959 (5th Cir. 2013) ("[A] Rule 60(b) motion may not be used as a substitute for timely appeal.") (citing *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993) (collecting cases)).[4]

4. *Accord Giroux v. FNMA*, 810 F.3d 103, 108 (**1st Cir.** 2016) ("Giroux 'may not use Rule 60(b) as a substitute for a timely appeal' ....") (cite omitted); *Stevens v. Miller*, 676 F.3d 62, 67 (**2d Cir.** 2012) ("In no circumstances ... may a party use a Rule 60(b) motion as a substitute for an appeal

it failed to take in a timely fashion."); *Bush v. DHS*, 642 Fed.Appx. 84, 85 (**3d Cir.** 2016) (per curiam)(citing *Reform Party of Allegheny Cty. v. Dep't of Elections*, 174 F.3d 305, 311–12 (3d Cir. 1999)); *Coleman v. Jabe*, 633 Fed.Appx. 119, 120 (**4th Cir.** 2016) (" '[A] Rule 60(b) motion may not

■ Accordingly, "it is not proper to grant relief under" 60(b) "'if the aggrieved could have reasonably sought the same relief by means of appeal.'" *Hibbard v. Penn–Trafford Sch. Dist.*, 621 Fed.Appx. 718, 723 (3d Cir. 2015) (quoting *Martinez–McBean v. Gov't of V.I.*, 562 F.2d 908, 911 (3d Cir. 1977)), *reh'g denied* (3d Cir. Sept. 8, 2015); *accord William v. Sahli*, 292 F.2d 249 (6th Cir. 1961); *Warren v. Uribe*, 2015 WL 8207526, *8 (E.D. Cal. Dec. 8, 2015) (60(b) may not be used to bring the underlying judgment up for review) (quoting *Harman v. Harper*, 7 F.3d 1455, 1458 (9th Cir. 1993)), *COA denied*, No. 16–15331 (9th Cir. Apr. 25, 2016).

■ In other words, "if the reason asserted for the Rule 60(b)[ ] motion could have been addressed on appeal from the judgment," the motion must be denied "as merely an inappropriate substitute for an appeal." *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (citing, *inter alia*, 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, <u>Federal Practice & Procedure</u> § 2864 at 359-60 and n.25 (2d ed. 1995)). *See, e.g., Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000) ("A lack of subject-matter jurisdiction is not by itself a basis for deeming a judgment void, that is, open to collateral attack. For ordinarily that is a ground for reversal that can be presented to the appellate court on direct appeal.") (internal citations omitted).

The Supreme Court enshrined this principle in *Ackermann v. U.S.*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). In *Ackermann*, a district court had issued judgment cancelling the Ackermanns' certificates ·of naturalization. After entry of judgment, a co-defendant appealed, but the Ackermanns did not. After the Circuit granted relief to co-defendant on appeal, the Ackermanns filed a 60(b) motion. The district court denied the 60(b), and the Supreme Court affirmed. The Court reasoned that Ackermann "made a considered choice not to appeal" and that he "cannot be relieved of [the consequences] of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong." *Ackermann*, 340 U.S. at 194–95, 71 S.Ct. 209. *Accord Salazar v. DC*, 633 F.3d 1110, 1120 (D.C. Cir. 2011) ("Rule 60(b)(6) should be only 'sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'") (cite omitted).

The Seventh Circuit illustrated this principle in *Banks v. Chicago Bd. of Ed.*, 750 F.3d 663 (7th Cir. 2014). It affirmed the denial of a Title VII plaintiff's motion for relief from judgment, holding that

> [t]he district court did not abuse its discretion by denying Banks's post-judgment motion for relief. In her motion, Banks

substitute for a timely appeal.'") (quoting *In re John Burnley*, 988 F.2d 1, 3 (4th Cir. 1992)); *Walker v. Transfrontera CV de SA*, 634 Fed.Appx. 422, 426 n.3 (**5th Cir.** 2015) (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981));

*Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (**6th Cir. 2006**) (**Richard Allen Griffin, J.**) ("'A party may not use a Rule 60(b)(4) motion as a substitute for a timely appeal.'") (cite omitted));

*Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (**7th Cir.** 2000) ("a collateral attack on a final judgment is not a permissible substitute for appealing the judgment within ... 30 days") (cites omitted); *Rhines v. Young*, 2016 WL 614665, *3 (D.S.D. Feb. 16, 2016) ("'60(b) was not intended as a substitute for a direct appeal from an erroneous judgment. The fact that a judgment is erroneous does not constitute a ground for relief under the rule.'") (quoting *Hartman v. Lauchli*, 304 F.2d 431, 432 (**8th Cir.** 1962)); *U.S. v. 31.63 Acres of Land*, 840 F.2d 760, 762 (**10th Cir.** 1988)

("Even if the district court's construction of the EAJA requirements was clearly wrong, Tinker would not be entitled to relief under Rule 60(b)(6). * * * Tinker is simply attempting to use Rule 60(b) as a substitute for a timely appeal on the merits and that is not permitted.");

*Salazar v. DC*, 177 F.Supp.3d 418, 441 (D.D.C. 2016) ("'[I]t is a commonplace that Rule 60(b)(6) may not be used as a for an appeal not taken.'") (quoting *Twelve John Does v. DC*, 841 F.2d 1133, 1141 (**D.C. Cir.** 1988)); *In re Chartier*, 2015 WL 7074294, *2 (M.D. Fla. Aug. 13, 2015) ("'A party my not use Rule 60(b)(6) as a substitute for a timely and proper appeal'" and "Rule 60(b)(6) does not reward a party that seeks to avoid the consequences of its own free, calculated, deliberate choices,' as when a party chooses not to file an appeal.") (quoting *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 840 (**11th Cir.** 1982) and *Aldana v. Del Monte Fresh Produce, N.A.*, 741 F.3d 1349, 1357 (11th Cir. 2014), respectively); *Patton v. Sec'y of Dep't of HHS*, 25 F.3d 1021, 1028 (**Fed. Cir.** 1994).

argued that the district court erred by finding that she had not offered sufficient evidence to support her claims and by misinterpreting the [statute]. In her brief before this court, she advances the same errors of fact and law.

*These arguments could have been raised in a direct appeal, but Banks forfeited her opportunity to appeal the judgment because she failed to file a notice of appeal that would have been timely with respect to the entry of judgment. To protect her ability to raise these arguments, she had to file either a timely Rule 59(e) motion or a timely notice of appeal, and she did neither.*

*Banks*, 750 F.3d at 667–68. The Second Circuit states the rule in absolute terms as well: "In no circumstances, though, may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in timely fashion." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (cite omitted).

■ **This alone is dispositive of Kraft's motion, because Kraft and KALP elected, for whatever reason, not to appeal this Court's June 22, 2011 default judgment.** Nor did they appeal any of the interlocutory orders, particularly those determining that Kraft committed willful bad-faith destruction of evidence, committed fabrication of evidence, and failed to cooperate with discovery. *See, e.g., Hibbard*, 621 Fed.Appx. at 723 (granting motion to dismiss appeal in part for lack of jurisdiction and otherwise summarily affirming the denial of *pro se* appellant's Rule 60(b)(6) motion, Court found "the conclusion is inescapable that Hibbard made a considered decision not to appeal the ... order" dismissing her complaint with prejudice); *Winterthur Int'l Am. Ins. Co. v. Garamendi*, 2005 WL 3440266, *3 (E.D. Cal. Dec. 14, 2005) ("[P]laintiffs here made the decision not to appeal and Rule 60(b)(5) cannot save them from that miscalculation."); *cf. Hawkins v. Borsey*, 319 Fed.Appx. 195, 196 (4th Cir. 2008) ("Appellants failed to appeal the entry of default judgment. [T]heir history of litigating portions of the case and then failing to respond during other portions shows that the decision not to appeal was a conscious choice. Thus, appellants' motion was merely an untimely attempt to appeal the final judgment.").

■ **As our Circuit explained in *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291 (9th Cir. 1982),**

**[a]llowing motions to vacate pursuant to Rule 60(b) after a deliberate choice has been made not to appeal, would allow litigants to circumvent the appeals process and would undermine greatly the policies supporting the finality of judgments.** Litigants unsuccessful at trial could forgo available appeals and, should subsequent decisions in other cases render their positions viable, they could move to have adverse judgments vacated. The uncertainty resulting from such a rule would be unacceptable.

*Id.* at 1293 (boldface added) (affirming dismissal of a 60(b) motion filed only 48 days after judgment where the movant had failed to appeal and his appeal time had elapsed).

Indeed, "[t]he concern that parties or courts could use Rule 60(b) to circumvent the time limit for filing appeals animates our case law." *Banks*, 750 F.3d at 667 (citations omitted). "If parties or courts could use Rule 60(b) to revive cases in which a party failed to appeal within the standard deadline, Appellate Rule 4 would lose much of its force." *Mendez v. Republic Bank*, 725 F.3d 651, 659 (7th Cir. 2013); *accord In re Ray Jasper, Debtor*, 559 Fed.Appx. 366, 372 (5th Cir.), *cert. denied sub nom. Jasper v. Stephens*, —— U.S. ——, 134 S.Ct. 1536, 188 L.Ed.2d 466 (2014).

FRAP 4's strict time limit for filing appeals would be circumvented by allowing Rune Kraft to raise alleged errors of law and fact by way of this 60(b) motion, *Plotkin*, 688 F.2d at 1293, which is "nothing more than the first step in an attempt to take an untimely appeal" from the *2011* judgment. *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800 (7th Cir. 2000) ("The appeal ... from the denial of the [60(b)] motion is in fact an untimely appeal from the final judgment that the Rule 60(b) motion challenged, and ... must be dismissed.").

**Here, any errors of law, fact, or logic committed by the Magistrate or the under-**

signed had occurred, and were obvious, by the time this Court entered judgment in 2011. Kraft could and should have raised those assignments of error by way of a Fed. R. Civ. P. 59(e) reconsideration motion in this Court in June-July 2011, and then by appealing to the U.S. Court of Appeals if this Court denied reconsideration. *See* Doc 286 (Inland's Opp) at 8 ("If Judge Fairbank's condition resulted in an incorrect decision (which it did not), Kraft had a ready remedy—an appeal—of which he did not avail himself."); *see, e.g., Ziglar v. U.S.*, 2010 WL 4647248, *3 (M.D. Ala. Nov. 10, 2010) (although 60(b)movant complained that court had wrongly denied a continuance, he "presents no circumstance that would have prevented him from raising this ground in his Objections to the [R&R].") (citing *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (60(b)(6) movant must show circumstances beyond his control that prevented him from taking timelier action)).

As to Kraft's theory about Inland perpetrating "fraud on the court", Kraft does not show that he lacked knowledge of the alleged fraud at the time judgment was entered; that is, he does not show that he could not have argued fraud on the court in a timely reconsideration motion in this Court and/or on appeal to the Ninth Circuit. *See* Inland Opp (Doc 286) at 15 ("[N]othing impaired Kraft's practical ability to learn earlier of the grounds relied upon. He had access to and awareness of the judgment in this case and the reasons underlying its entry."); *accord Jasper*, 559 Fed.Appx. at 372 ("[A]ny error, if any, related to 28 U.S.C. § 2254(f) in the habeas proceedings occurred—and was obvious—in 2011 and 2012 when the district court and this court denied Jasper's habeas petition. Jasper should have appealed the error at that point on direct appeal, and we believe that the district court's determination that Jasper's motion was untimely did not constitute an error—much less an abuse of discretion.") (citing *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir.), *cert. denied*,— U.S. ——, 134 S.Ct. 1021, 187 L.Ed.2d 867 (2014), and *Tamayo*, 740 F.3d 986 (Higginbotham, J., concurring) ("I would affirm the district court's rejection of the Rule 60 submission as untimely.")). On the contrary, Inland points

out (Doc 286 at 18), "it appears that Kraft is arguing that Plaintiffs falsified the documents at issue in the Spoliation Motion. But Kraft made those same arguments in his unsuccessful (1) opposition to the Spoliation Motion, and (2) motion for reconsideration."

Thus, Kraft's decision not to raise any alleged errors on appeal bars his attempt to raise them through this 60(b) motion years after his time for appeal elapsed. "Rule 60(b) simply may not be used as an end run to effect an appeal outside the specified time limits, [for] otherwise those limits become essentially meaningless." *Pryor v. USPS*, 769 F.2d 281, 288 (5th Cir. 1985); *see, e.g., Jones v. Frazesn*, 2010 WL 3504847, *3 (E.D. Cal. Sept. 3, 2010) (Tallman, Cir. J., by designation) ("Even if his claim were not untimely, Plaintiff is not entitled to Rule 60(b) relief . . . after deliberately choosing not to pursue his judicial mistake claims on appeal.") (citing *Plotkin*, 688 F.2d at 1293); *Wadley v. Equifax Info. Servs., LLC*, 296 Fed.Appx. 366, 369 (4th Cir. 2008) ("Wadley may not use Rule 60(b) as a vehicle to excuse his failure to seek review of the final judgment granted . . . almost two years earlier and from which he chose not to take an appeal.").

The Court has not located any precedent suggesting that this long-standing rule may not or should not be applied to *pro se* Rule 60(b) movants who failed to appeal the errors which they seek to redress through their 60(b) motion. Thus, the Court's analysis is not changed by the fact that Kraft was pro se when he filed this motion. Nor is the Court's analysis changed by the fact that Kraft may have been unrepresented by counsel during the standard period for appeal of the June 2011 Judgment. *See Regan v. Hawaii Dep't of Public Safety*, 334 Fed.Appx. 848, 849 (9th Cir. 2009) ("[A]rguments not raised on appeal *by a pro se litigant* are deemed abandoned.") (citing *Wilcox v. Commissioner*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988)) (emphasis added).

ANALYSIS: THE RULE 60(b)(3) MOTION FOR RELIEF FROM JUDGMENT IS UNTIMELY

The Court has already concluded that Kraft's failure to appeal the 2011 Judgment

bars him from seeking relief from that judgment pursuant to Fed. R. Civ. P. 60(b). **The Court now concludes that, even if Kraft were not barred from seeking 60(b) relief, this motion is untimely. Because the Court lacks jurisdiction over untimely Rule 60(b) motions, that is a second, independent basis requiring dismissal of the motion be.**

1. Rune Kraft is Not Making a "Voidness" Argument that Could Be Raised Under Rule 60(b)(4)

■ Unlike motions for relief from judgment pursuant to Rule 60(b)(1), (2), or (3) (which must be filed within one year of the entry of judgment) or motions for relief from judgment pursuant to Rule 60(b)(5) or (6) (which must be filed within a reasonable time), "[m]otions to set aside a judgment as void under Rule 60(b)(4) may be brought at any time." *Million (Far East), Ltd. v. Lincoln Provisions, Inc. USA,* 581 Fed.Appx. 679, 682 (9th Cir. 2014) (citing *Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir. 1987)); *see also Lee v. AFT–Yakima,* 2011 WL 4703106, *2 (E.D. Wash. Oct. 4, 2011) ("[M]otions for relief from judgment on the basis that the judgment was void are not subject to the one-year limitation period in Rule 60(c)(1)."); *In re Sillman,* 2014 WL 223099, *5 (E.D. Cal. Jan. 21, 2014) (because "[a] void judgment is from its inception a legal nullity," "relief from a void judgment has no time limitations") (quoting *Boch Oldsmobile,* 909 F.2d at 661).

■ **The instant motion for relief from judgment, however, is not a 60(b)(4) motion because it does not argue that the judgment was void as our case law narrowly defines that term for purposes of this Rule.** Our Circuit holds that although Rule 60(b)(4) provides for relief from a judgment if it is void as a matter of law,

> [t]he list of such judgments is exceedingly short, and **"Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."**

*United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 271, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010) [citing for comparison *Chicot Cty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376, 60 S.Ct. 317, 84 L.Ed. 329 (1940) and *Stoll v. Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938))].

*Dietz v. Bouldin,* 794 F.3d 1093, 1095 (9th Cir. 2015), *aff'd o.g.,* —— U.S. ——, 136 S.Ct. 1885, 195 L.Ed.2d 161 (2016); *accord U.S. v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 661 (1st Cir. 1990).

Moreover, " '[f]ederal courts considering [whether] a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." *Espinosa,* 559 U.S. at 270, 130 S.Ct. 1367. *See, e.g., Reardon v. Reardon,* 421 Fed.Appx. 141, 142 (3d Cir. 2011) ("Reardon alleges that the District Court erred in applying the doctrine of absolute immunity …, but this is an allegation of legal error only; it is not an allegation that the federal court lacked jurisdiction over his section 1983 action such that the judgment rendered is void.") (n.1 omitted).

■ **Moreover, a motion for relief from judgment may be treated as a 60(b)(4) motion "only if the judgment at issue actually is void and not merely voidable…."** *Zone Sports Ctr., Inc., LLC v. Red Head, Inc.,* 2013 WL 2252016, *6 (N.D. Cal. May 22, 2013) (citing 12 James William Moore et al., Moore's Federal Practice ¶ 60.44 (3d ed. 1997)). As the Supreme Court held over a century ago, "[i]f the court had jurisdiction of the cause and the party, its judgment is not void, but only voidable by writ of error." *Ball v. U.S.,* 163 U.S. 662, 669–70, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Therefore, even if the Court reached the merits and credited Kraft's allegations that plaintiffs deceived and perpetrated fraud upon the Court and its adversaries, the judgment would be at most voidable, not void. *Accord Brumfiel v. U.S. Bank,* 2014 WL 4395044, *3 (D. Colo. Sept. 5, 2014) ("Plaintiff argues that … because Defendants' attempt to foreclose was 'manufactured on fraud … any judgment is rendered

void *ab initio....'* * * * Even if Plaintiff's allegations of forged documents are taken as true, however, the judgment is not rendered void. * * * The fraud alleged in Plaintiff's Rule 60(b) Motion does not constitute a jurisdictional defect or evidence a deprivation of procedural due process."). **Thus, Kraft's motion does not qualify as a motion for relief from judgment under 60(b)(4) due to voidness. As shown below, the motion may be construed only as a 60(b)(*3*) motion.**

2. Rule 60(c) Imposes an Inflexible One-Year Time Limit on Rule 60(b)(3) Motions

 **As a Rule 60(b)(3) motion, it had to be filed within one year from entry of judgment.** *See* Fed. R. Civ. P. 60( c)(1). As Inland points out, "60( c)(1)'s one-year time limit for motions premised upon mistake, newly discovered evidence, or fraud is jurisdictional and cannot be extended." Doc 286 at 9-10 (citing *Nevitt v. U.S.*, 886 F.2d 1187, 1188 (9th Cir. 1989)). Accordingly, if Kraft's motion is construed as a 60 (b)(3) motion as it should be, it is untimely and must be dismissed with prejudice for lack of subject-matter jurisdiction. *Cf. U.S. v. Samish, Snohomish, Snoqualmie, and Steilacoom Indian Tribes*, 1995 WL 911759, *2 n.2 (W.D. Wash. Jan. 23, 1995) ("Insofar as the tribes seek to conduct discovery about the existence of any ex parte communications ..., the court finds that this request is untimely. A motion for relief from a final order for reasons of misconduct by an opposing party must be filed within one year after the order was entered.").

3. Even Construed as a Motion for Relief Under 60(b)(1), Kraft's Motion Would Still be **Untimely**

Rule 60(b)(1) provides that a court may grant relief from a final judgment on the ground of mistake, inadvertence, surprise, or excusable neglect. Kraft's motion does not identify any purported error or impropriety that could qualify as inadvertence, surprise, or excusable neglect on the part of the Court or otherwise.

 There is some persuasive authority that "Rule 60(b)(1) applies to errors by judicial officers as well as parties." *U.S. v. Craft*, 2016 WL 160734, *1 (N.D. Ind. Jan. 13, 2016) (citing *Brandon v. Chicago Board of Ed.*, 143 F.3d 293, 295 (7th Cir. 1998)). To the extent that Kraft's motion might be construed as seeking relief from judgment under Rule 60(b)(1) for an alleged mistake of law or other mistake by the Court, however, the motion would be untimely: Rule 60 subsection (c)(1) provides that a motion for relief under 60(b)(1) must be made within a reasonable time, which must be "no more than *a year* after the entry of the judgment or order", and Kraft did not attempt to file the instant motion until *more than three and a half years* after the June 22, 2011 judgment.

 Rule 60(c)(1) permits a district court to find that it was "reasonable" for a party to file a 60(b)(1) motion as long as a year after entry of judgment, depending on circumstances. Circuit precedent, however, holds that a court may not find a 60(b)(1) motion to be filed "within a reasonable time" unless it was filed within the time for taking an appeal. *See Arrieta v. County of Kern*, 161 F.Supp.3d 919, 931 (E.D. Cal. 2016) ("Rule 60(b)(1) allows the Court" to grant relief from judgment if the motion is "filed within a reasonable time *not exceeding the time for appeal.*") (citing *Gila River Ranch, Inc. v. U.S.*, 368 F.2d 354, 357 (9th Cir. 1966)); *accord Lebahn v. Owens*, 813 F.3d 1300, 1305 (10th Cir. 2016) ("[A] Rule 60(b)(1) motion asserting mistake of law is untimely—and therefore gives the district court no authority to grant relief—unless brought within the time to appeal.") (citing *Van Skiver v. U.S.*, 952 F.2d 1241, 1244 (10th Cir. 1991)).

Thus, Kraft's motion would be untimely if construed as seeking relief under 60(b)(1) for mistakes of law.

4. Even If Construed as a Rule 60(b)(2) Motion, Kraft's Motion Would Still be **Untimely**

 Rule 60(b)(1) provides that a court may grant relief from a final judgment on the ground that the movant has presented "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule

59(b)." To the extent that Kraft's motion might be construed as seeking relief under 60(b)(2) on the basis of newly discovered evidence not reasonably available shortly after the judgment issued, the motion would be untimely: 60(c)(1) provides that a motion for relief under 60(b)(2) must be made within a reasonable time, "no more than *a year* after the entry of the judgment or order", and Kraft did not attempt to file the instant motion until *more than three and a half years* after the June 22, 2011 judgment.

### 5. Construed as a Motion for Relief Under Rule 60(b)(5), the Motion Would Still be **Untimely**

Rule 60(b)(5) provides that a court may grant relief from judgment if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable." Kraft does not allege that the judgment has been satisfied, released or discharged. Nor does he allege that it is based on an earlier judgment that has been reversed or vacated.

■ The only way Kraft's motion can be construed as a 60(b)(5), then, is if he is contending that prospective application of the judgment is no longer equitable. Even if the Court construed Kraft's motion as a 60(b)(5), however, it would still be untimely: a 60(b)(5) motion must be filed within a reasonable time under the circumstances. Whatever errors Kraft believes this Court made in its terminating-sanction opinion or any earlier ruling, he was aware of those alleged errors at the time this Court entered judgment, whether or not anything had yet led him to speculate that the alleged errors were caused by this judge's medical condition. Thus, construed as a 60(b)(5) motion, this motion was not filed within a reasonable time and thus would be untimely.

### 6. KRAFT CANNOT HAVE THIS MOTION HEARD AS A RULE 60(b)(6) MOTION

**Fed. R. Civ. P. 60(b)(6) provides that in addition to the grounds set forth in subsections (1) through (5), a federal court may** grant relief from judgment for "any other reason" that justifies such relief.

■ **A party may not seek relief from judgment under 60(b)(6), however, on any ground that is already specifically enumerated in 60(b) subsections (1) through (5).** *See Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012) (" 'In simple English, the language of the 'other reason' clause, *for all reasons except the five particularly specified*, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.' ") (quoting *Klapprott v. U.S.*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949)) (emphasis added); *see also In re Macklin*, 2015 WL 1945160, *17 (E.D. Cal. Bankr. Apr. 8, 2015) ("The other enumerated provisions of Rule 60(b) and Rule 60(b)(6) are mutually exclusive, . . . .") (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)), aff'd sub nom. *Macklin v. Deutsche Bank Nat'l Trust Co*, 2015 WL 9274103 (E.D. Cal. Dec. 21, 2015); *accord Branca v. Security Benefit Line Ins. Co.*, 773 F.2d 1158, 1164 (11th Cir. 1985) ("[M]otions under 60(b)(6)", the catch-all provision, "may not be supported by the same reasons that might support a motion under" the more specific provisions) (applied in context of a Rule 60(b)(2) motion); *see also Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (applied in context of a Rule 60(b)(1) motion)). "This is true even where the movant cannot satisfy the requirements of the specific subsection [60(b)(1) through (5)]." *U.S. v. Lopez*, 2016 WL 742111, *2 (S.D. Ala. Feb. 24, 2016) (citing *Solaroll Shade & Shutter Corp. v. Bio–Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986)).

Thus, because Rule 60(b)(1) alone specifically governs relief from judgment for mistakes of law, 60(b)(2) alone specifically governs relief for newly discovered evidence, 60(b)(3) alone specifically governs relief due to fraud, and 60(b)(5) alone specifically governs relief due to the inequity of prospective enforcement, Kraft may not seek relief from judgment on any of those grounds pursuant to the catch-all provision, Rule 60(b)(6).

This determination is consistent with the principle that parties should not be allowed to circumvent the bright-line one-year time limit applicable to 60(b)(1) through (3) motions by characterizing their motions for relief from judgment as 60(b)(6) motions, which are subject only to a "reasonable time" requirement. *See Walsh v. U.S.*, 639 Fed.Appx. 108, 111 (3d Cir. 2016) (per curiam) ("The basis for his motion was more suited for the new[-]evidence provision of Rule 60(b)(2), but such motions must be filed within one year of the entry of judgment. Walsh's motion, filed more than six years after judgment, was too late for such relief. *He cannot avoid that time bar by resorting to Rule 60(b)(6).*") (citing *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975) and *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006) ("[I]f the asserted ground for relief falls within one of the enumerated grounds ... subject to the one-year time limit of Rule 60(b), relief under the residual provision of Rule 60(b)(6) is not available.")) (emphasis added).

Moreover, our Circuit's precedent forecloses Kraft from seeking relief pursuant to 60(b)(6) for a second, independent reason. Interpreting *Ackermann* (U.S. 1950), our Circuit has explained as follows:

> The Supreme Court first addressed Rule 60(b)(6) in *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949), stating, "[i]n simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." [*Id.*] at 614–15, 69 S.Ct. 384 ....
>
> Thereafter, in *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the Supreme Court somewhat narrowed the scope of the rule, holding

that it would not provide relief for a "free, calculated, deliberate choice [ ]" not to appeal, where "[n]either the circumstances of [movant] nor his excuse for not appealing is so extraordinary as to bring him within *Klapprott* or Rule 60(b)(6)." 340 U.S. at 198, 202, 71 S.Ct. 209.

This Court has held that "[i]n order to bring himself within the limited area of Rule 60(b)(6) a [movant] is required to establish the existence of extraordinary circumstances which prevented [him from prosecuting] or rendered him unable to prosecute an appeal."

*Mackey*, 682 F.3d at 1251 (paragraph breaks added) (quoting *Martella v. Marine Cooks & Stewards Union, Seafarers Int'l Union of North America, AFL-CIO*, 448 F.2d 729, 730 (9th Cir. 1971)).

 Under this demanding standard, a Rule 60(b) movant who failed to appeal from the judgment, must show that the extraordinary " 'circumstances ... essentially made the decision not to appeal an involuntary one.' " *Salazar v. DC*, 633 F.3d 1110, 1121 (D.C. Cir. 2011) (quoting *Twelve John Does v. DC*, 841 F.2d 1133, 1141 (D.C. Cir. 1988)); *see also Walker v. Puget Sound Naval Shipyard*, 2015 WL 519741, *2 (W.D. Wash. Feb. 6, 2015) (" 'The residual clause, like Rule 60(b) generally, is not a substitute for an appeal, and in all but exceptional circumstances, the failure to prosecute an appeal will bar relief under that clause.").

 According to our Circuit's precedents applying *Klapprott* (U.S. 1950) and *Martella* (9th Cir. 1971), gross negligence by counsel which is so serious as to amount to "virtual abandonment" can be an extraordinary circumstance justifying relief from a default judgment under Rule 60(b)(6). *See Community Dental Servs. v. Tani*, 282 F.3d 1164, 1169–71 (9th Cir. 2002) ("*Tani* ")[5]; *see*

---

5. *Accord Salazar*, 633 F.3d at 1121 (citing *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234 (**D.C. Cir.** 1964));

*Boughner v. Sec'y of HEW*, 572 F.2d 976, 978 (**3d Cir.** 1978), *cited by Gallagher v. Farm Family Ins. Co.*, 2016 WL 158520, *2 (D.N.J. Jan. 12, 2016) (13-month delay in filing motion for relief from judgment was caused not by movant but by counsel, where plaintiff "made repeated unsuc-

cessful attempts to contact his former attorneys, was 'always ready, willing, and able to provide the [required] information,' and was not even notified that his case had been dismissed until about five months after this Court's Order.").;

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 398–404 (**5th Cir.** Unit A 1981) (district court abused its discretion in denying relief from judgment where "unbeknowst to these two defen-

414

*also Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097 (9th Cir. 2006) (limiting scope of *Tani*); *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (relief from judgment was warranted under Rule 60(b)(6) due to counsel's failure to prosecute).

■ There is also persuasive authority that a party who failed to appeal a judgment may nonetheless seek relief from judgment pursuant to Rule 60(b)(6) if he shows that he suffered from a confluence of a disabling illness *and* a severe lack of financial resources during the appeal period, but not if he merely shows financial hardship alone or a medical problem alone. *See Randall v. Merrill Lynch*, 820 F.2d 1317, 1321 (D.C. Cir. 1987).

**Kraft has not identified any extraordinary circumstance which prevented him from timely appealing the judgment shortly after it was entered and thereby raising any alleged legal or factual errors to the Circuit.** He has not shown that circumstances were so extraordinarily difficult that his decision not to appeal the June 2011 judgment was "involuntary", *Salazar*, 633 F.3d at 1121. *Cf. Hale d/b/a Data Base Techs. v. Belton Assocs., Inc.*, 305 Fed.Appx. 987, 989 (4th Cir. 2009) ("Here, there was no abuse of discretion. Under the cited authorities [including *Ackermann*], Hale's negligent failure to not[ic]e a timely appeal from the

district court's final order precluded relief under Rule 60(b). This case simply does not present exceptional circumstances...."). As noted above, any error by the Magistrate or by this Judge was made in the judgment and opinion issued on June 22, 2011, and would have been recognizable as arguable reversible error immediately.

■ Rune Kraft does not claim that his asserted bases for relief from judgment came into being only upon the issuance of new binding precedent by the Supreme Court or our Circuit in the period between the entry of judgment and his filing of this motion. In any event, "the Supreme Court [has] noted that '[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6).'" *Gates v. Ryan*, 2011 WL 6369731, *2 (D. Ariz. Dec. 20, 2011) (quoting *Agostini v. Felton*, 521 U.S. 203, 239, 117 S.Ct. 1997, 2018, 138 L.Ed.2d 391 (1997)), *COA denied*, No. 12–15011 (9th Cir. Feb. 17, 2012).

**Therefore, the Court is unable to construe the motion as one for relief from judgment under Rule 60(b)(6) (subject only to a "reasonable time" filing requirement) rather than Rule 60(b)(3) (subject to a strict bright-line limit of one year after the entry of judgment).[6]**

---

dants, their counsel later withdrew from the case, and the defendants were consequently absent from and unrepresented at trial", leading the district court to strike those defendants' pleadings and enter default judgment against them, and the movants "immediately retained new counsel" and moved for relief as soon as they learned of the judgment);

*Shepard Claims Serv., Inc. v. Wm. Darrah & Assocs.*, 796 F.2d 190, 195 (**6th Cir.** 1986) (Lively, C.J.).

**6.** Alternatively, plaintiffs to point Ninth Circuit Judge Kozinski's warning against using Rule 60(b)(6) as a way to set aside a judgment based on a "perceived lack of mental competence" because that could serve as "[a]n open invitation to parties to rummage through the health records of judges who ruled against them five, ten, even twenty years ago, in the hope of coming up with a more compelling showing—or a district judge more receptive to the idea of reopening past judgments." *U.S. v. State of Washington*, 98 F.3d 1159, 1167 (9th Cir. 1996) (Kozinski, J., concurring). "This," cautioned Judge Kozinski,

"is very bad medicine." *State of Washington*, 98 F.3d at 1167 (Kozinski, J., concurring).

Plaintiffs contend that Kraft's motion "embodies exactly this type of improper probe" into a judge's alleged medical impairments. *See* Doc 286 at 13. *Cf. U.S. v. State of Washington*, 19 F.Supp.3d 1184, 1189, 1191 (W.D. Wash. 1995) (Rothstein, J., joined by Rafeedie, J.) ("The ... Tribes now move to reopen the judgment of March 23, 1979 pursuant to Fed. R. Civ. P. 60(b)(6) for the purpose of conducting discovery into the state of Judge Boldt's mental health at the time he rendered his decision. The motion is prompted by an article published on June 11, 1992 by the Seattle Post-Intelligencer which states that, according to Judge Boldt's death certificate issued in March of 1984, he suffered the onset of Alzheimer's Disease on 1978, the year before the decision at issue was made. * * * The Court concludes that the moving tribes have failed to demonstrate the existence of any extraordinary circumstances which would warrant reopening the final order ... for the purpose of conducting discovery into Judge Boldt's mental health.").

## THE COURT LACKS JURISDICTION OVER AN UNTIMELY RULE 60(b) MOTION

The Court has determined above that Kraft's motion cannot be construed as arguing voidness under 60(b)(4) or inequitable prospective enforcement under (b)(5) and cannot be treated as a motion under the catchall, (b)(6). The Court then determined that the motion is untimely if construed as seeking relief under any of the other three subdivisions of: (b)(1) (mistake of law etc.), (b)(2) (newly discovered evidence), or (b)(3) (fraud).

■ **A court is required to dismiss an untimely Rule 60(b) motion for relief from judgment for lack of subject-matter jurisdiction.** *See Norwood v. Vance*, 517 Fed. Appx. 557 (9th Cir. 2013) ("To the extent that Norwood's motion seeks relief under Rule 60(b)(1) or Rule 60(b)(3), the district court lacked jurisdiction to consider it because Norwood filed the motion more than one year after judgment was entered.") (citing *Nevitt v. U.S.*, 886 F.2d 1187, 1188 (9th Cir. 1989) (district court lacks jurisdiction to consider an untimely motion for relief from judgment)), *cert. denied*, —— U.S. ——, 134 S.Ct. 1344, 188 L.Ed.2d 349 (2014); *see also Burton v. Spokane Police Dep't*, 517 Fed. Appx. 554, 555 (9th Cir. 2013) (same); *SEC v. Amundsen*, 470 Fed.Appx. 651, 652 (9th Cir. 2012) (same); *De Adams v. Hedgpeth*, 2015 WL 114163, *3 (C.D. Cal. Jan. 7, 2015) ("The judgment challenged by the instant motion was entered in March 2012, and petitioner did not file the instant motion until December 2014, more than two and a half years later. Accordingly, to the extent that the motion seeks relief from judgment pursuant to Rule 60(b)(1)..., the motion is untimely and the Court would lack jurisdiction to consider it.").

## THE COURT CANNOT REACH THE MERITS OF THE RULE 60(b) MOTION

As noted above, Rune Kraft's motion for relief from judgment is untimely, and the Court lacks subject-matter jurisdiction over untimely motions for relief from judgment. *See, e.g., Abet Justice, LLC v. America First Credit Union*, 2015 WL 4110800, *1 (D. Nev. July 7, 2015) ("A district court lacks jurisdiction over an untimely Rule 60(b)(2) motion.") (citing *Nevitt v. U.S.*, 886 F.2d 1187, 1188 (9th Cir. 1989)).

■ **Where the Court lacks jurisdiction over a motion for relief from judgment, the Court may not reach the merits of the motion.** *See Mayhan v. Ryan*, 2012 WL 122783, *2 (D. Ariz. Jan. 17, 2012) ("Before the Court can reach the merits of any Rule 60(b) issue, the petitioner must first meet the rule's requirement that such a motion be brought in a timely manner, ..., *Gonzalez* [*v. Crosby*], 545 U.S. [524] at 535 [125 S.Ct. 2641, 162 L.Ed.2d 480 (2005)], and he has not made such a showing.") (other internal citation omitted); *cf. In re Stephen Lee Beck and Donita M. Beck, Debtors*, BAP No. NC–15–1095–JuKuW, 2016 WL 399455, *7 (9th Cir. BAP Feb. 1, 2016) ("If a Civil Rule 60(b)(1) motion is untimely, the bankruptcy court lacks jurisdiction to consider the merits of the motion."); *cf. Baugh v. Holder*, 2015 WL 3946897, *2 (D. Or. June 29, 2015) (noting District Judge's explanation "that even if the court had jurisdiction to rule on Baugh's Rule 60(b) motion, he declined to address the merits of that motion because it was untimely

*Cf. also No. Beverly Park Homeowners Ass'n v. Bisno*, 147 Cal.App.4th 762, 782, 54 Cal.Rptr.3d 644, 659 (Cal. App. 2007) (affirming denial of a party's post-judgment motion to dissolve a permanent injunction) ("[W]e find no reasonable basis to permit the Bisnos to depose the trial judge's wife, or to obtain his medical records. [E]ven if we assume the remedy of dissolving the permanent injunction ... is available [under 60(b)] on the basis of the trial judge's mental infirmity, the Bisnos have made no showing to reasonably suggest that such an infirmity infected the issuance of the permanent injunction in their case. Absent such a showing, the Bisnos['] request for discovery is nothing more than an attempt 'to rummage through the health records of a judge who ruled against them ... in the hope of coming up with a more compelling showing.") (brackets omitted), *reh'g denied* (Cal. App. Mar. 2, 2007), *rev. den.* (Cal. May 16, 2008). **Having concluded that Kraft may not seek 60(b)(6) relief for other reasons, the Court need not rely on Kozinski's public-policy argument against considering 60(b)(6) relief** when a losing party makes a belated self-serving claim that a judge's medical condition led to the alleged errors in her decision.

filed."), *app. dis.*, No. 15–35693 (9th Cir. Dec. 31, 2015).

### RULE 60(d) IS OF NO AVAIL TO KRAFT HERE

Federal Rule of Civil Procedure 60(d), Other Powers to Grant Relief, provides in its entirety as follows:

This rule does not limit a court's power to:

(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

(3) set aside a judgment for fraud on the court.

**Kraft has moved for relief from judgment in the same action where the judgment was rendered; he has not filed an independent action to relieve him from judgment, so 60(d)(1) is inapposite.** *Accord Taylor v. U.S.*, 2014 WL 1652348, *2 (E.D. Mo. Apr. 24, 2014) ("As a threshold matter, movant has not filed an independent action, but rather has filed a motion in his closed § 2255 matter. Movant therefore does not invoke Rule 60(d) and is not entitled to relief under it."), *aff'd*, No. 14–2066 (8th Cir. July 1, 2014); *Best v. U.S.*, 2010 WL 3782160, *2 (N.D. Ind. Sept. 22, 2010) ("First, the Court notes that Best has not filed an "independent action," but rather has filed a motion in this terminated § 2255 matter. Thus, he has not properly invoked Rule 60(d)(1).") (citing *Bailey v. City of Ridgeland*, 2008 WL 4793738, *2 (S.D. Miss. Oct. 30, 2008) ("[B]ecause Bailey has not filed an independent action, he is not entitled to relief under Rule 60(d)(1).")).

**In any event, FRCP " '60(d)(1) is not an affirmative grant of power but merely allows continuation of whatever power the court would have had to entertain an independent action [for relief from judgment] if the rule had not been adopted.' "** *Bailey v. U.S.*, 2013 WL 6800900, *2 (D. Ariz. Dec. 23, 2013) (quoting 11 Wright, Miller & Kane, Fed. Prac. & Proc. § 2868 (3d ed. Apr. 2013) (cite omitted)). *Accord U.S. v. Guillory*, 2013 WL 4782211, *8 (W.D. La. Sept. 5, 2013) ("To the extent that petitioner also argues that

this Court should have granted relief under the independent[-]action doctrine set forth in Rule 60(d), that claim is without merit. '[60(d)(1) ] is not an affirmative grant of power....'") (citing *Hess v. Cockrell*, 281 F.3d 212, 217 (5th Cir. 2002)).

**As for Rule 60(d)(2), it merely states that Rule 60 does not limit the power that the court otherwise already had—before the enactment of Rule 60(b)—to grant relief to a defendant who was not personally notified of an action (which does not apply here). As a sister court cogently explained,**

Rule 60(d)(2)... merely confirms a district court's power "to grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action." This statute applies to actions to enforce a lien or claim to property, or to remove an encumbrance or cloud on title to property, where a defendant cannot be served within the state and does not voluntarily appear. The statute authorizes an absent defendant who was not personally served or notified of an order to appear, to have a judgment adjudicating his interest in the property set aside within one year. *See* 28 U.S.C. § 1655. This statute and the reference to it in Rule 60(d)(2) have no bearing on this action or Plaintiff's motion to vacate the dismissal of his case.

*Jones v. State of Oklahoma*, 2014 WL 536008, *2 (W.D. Okla. Feb. 7, 2014) (DeGiusti, J.).

**As for Rule 60(d)(3), it merely states that Rule 60 does not limit the power that the court otherwise already had—before the enactment of Rule 60(b)—to set aside a judgment for fraud on the court (which is one of the grounds on which Kraft seeks relief through the instant Rule 60(b) motion).**

 **In other words, "Rule 60(d) is not an affirmative grant of power."** *U.S. v. Brown*, 2013 WL 3742444, *6 (E.D. Pa. July 17, 2013). No part of 60(d) confers any authority to vacate a judgment that the court does not already have pursuant to statute, case law, or some *other* rule. As a sister court stated in a similar situation,

[A]lthough [movant] calls his motion a motion under Federal Rule of Civil Procedure

60(d)(3), "Rule 60(d) merely reserves whatever power federal courts had prior to the adoption of Rule 60 to relieve a party of a judgment by means of an independent action according to traditional principles of equity,", i.e., Rule 60(d) does not itself offer the authority to bring an independent action to attack a judgment. *See* 12 ...Moore's Federal Practice § 60.80 (3d ed. 2007). * * *

*U.S. v. Spikes*, 2015 WL 5460567, *2 n.3 (E.D. Pa. Sept. 16, 2015); *see also U.S. v. Angle*, 2009 WL 1212240, *1 (E.D. Cal. May 5, 2009) ("Fed. R. Civ. P. 60(d)(3), although not a grant of power for reconsideration, recognizes the court's pre-existing power to set aside a judgment for fraud on the court.").

## NO NEED TO ADDRESS PLAINTIFFS' EVIDENTIARY OBJECTIONS TO KRAFT'S MOTION

Inland filed "Evidentiary Objections to Declaration of Rune Kraft." Inland begins by stating as follows:

> Plaintiffs generally object to Kraft's declaration to the extent that it contains irrelevant and immaterial "testimony." For example, after declaring that "[Judge Fairbank] did not comprehend, ignored or forgot the particulars of this matter," paragraph 14 contains an additional 13 sentences, comprising 26 additional lines, of irrelevant material regarding the "efforts of every [Inland] employee and contractor" dating back to 1969. It is unclear how this information has any bearing on Kraft's "Request to Reopen Case."

Doc 288 at 2. **Plaintiffs proceed to assert two specific objections—Lacks Foundation and Lacks Personal Knowledge in Violation of Federal Rule of Evidence 602—to fourteen paragraphs of Kraft's declaration:**

**Objection #1 is to Kraft Dec ¶ 3,** where Kraft stated, "During interaction with attorneys in Los Angeles around January 15, 201, [sic], I learned that Judge Valerie Baker Fairbanks [sic] had been undergoing treatment for brain cancer while presiding over this legal matter."

**Plaintiffs also object to Paragraph 3 as inadmissible hearsay in violation of Federal Rule of Evidence 602.** Rule 602, entitled Need for Personal Knowledge, provides in its entirety as follows: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703." *See also* Fed. R. Evid. 801(a) through ( c) (defining hearsay); Fed. R. Evid. 801(d) (excluding certain types of statements from the definition of hearsay that would otherwise meet the definition); Fed. R. Evid. 802, The Rule Against Hearsay ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."), subject to the exceptions enumerated in Fed. R. Evid. 803; *cf., e.g., Amorosi v. Comp USA*, 2005 WL 66605, *4 (S.D.N.Y. Jan. 12, 2005) ("[A] litigant may be entitled to relief under subsection (6) where the neglect of an attorney results from mental illness or other severe personal problem. * * * In each of the cases referenced above, the party seeking relief under Rule 60(b)(6) or their [sic] counsel provided some *evidence* of the attorney's mental illness. In this case, however, plaintiff has not provided the Court with *any* evidence regarding extraordinary circumstances that would have prevented [counsel] from pursuing the case, and therefore the court finds that Plaintiff is not entitled to relief under this doctrine.") (first italics added).

**Objection #2 is to Kraft Dec ¶ 4,** where Kraft stated, "It is my testimony that this health condition and the treatment of the health condition according to my investigation of the website of The American Cancer Society renders a person unable to function normally and that a person's physical condition, mental state of mind and level of competency would be greatly impaired. If that person was a judge the judicial officer would be unable to deal with all of the facts and the proper application of the law to the facts and thus perform the duties of the office fairly, impartially, intelligently, and diligently. [T]hat is what happened in this case."

**Objection #3 is to Kraft Dec ¶ 5,** which stated, "[S]he forgot things, had trouble concentrating and trouble remembering details related to the acceptance of jurisdiction based on specific sworn in facts by me describing and supported by documentation showing that [KALP] was a Delaware limited partnership that had one General Partner, Vicarea Real Estate, Inc. (A Delaware corporation), and 4 limited partners (all Delaware corporations) and that I had at all times acted as an authorized representative of Vicarea Real Estate, Inc."

**Objection #4 is to Kraft Dec ¶ 6,** which stated, "[S]he forgot things, had trouble concentrating and trouble remembering details related to the fact that Vicarea ... was a licensed California real estate broker."

**Objection #5 is to Kraft Dec ¶ 7,** which stated, "[S]he forgot things, had trouble concentrating and trouble remembering details related to the fact that no broker agreement had been entered into."

**Objection #6 is to Kraft Dec ¶ 8,** which stated, "[S]he forgot things, had trouble concentrating and trouble remembering details related to the law in California which requires a broker agreement to be in writing."

**Objection #7 is to Kraft Dec ¶ 9,** which stated, "[S]he forgot things, had trouble concentrating and trouble remembering details related to the fact that Kraft Americas, L.P. and Vicarea Real Estate, Inc. sent a book account stated based upon an account in writing to Inland, Inc. reflecting the work performed."

**Objection #8 is to Kraft Dec ¶ 10,** which stated, "[S]he claimed powers her office does not have or ignored or forgot the powers of her office by retroactively appointing me the General Partner of Kraft Americas, L.P. when Vicarea Real Estate, Inc. had been the sole General Partner since September 23, 2005 and she had been presented with sworn in facts supported by documents showing this fact."

**Objection #9 is to Kraft Dec ¶ 11,** which stated, "[S]he believed that she had the power to rewrite the laws or ignored the laws or forgot the laws governing Delaware limited partnerships"

**Objection #10 is to Kraft Dec ¶ 12,** which stated, "[S]he forgot or ignored a book account stated based upon an account in writing."

**Objection #11 is to Kraft Dec ¶ 13,** where Kraft stated in general and conclusory fashion, "For example, she did not comprehend, ignored or forgot the basics of how American companies do business."

**Objection #12 is to Kraft Dec ¶ 14,** where Kraft stated in general and conclusory fashion, "For example she did not comprehend, ignored or forgot the particulars of this matter."

**Objection #13 is to Dec ¶ 15,** which stated, "[S]he forgot or ignored that I did not receive motions, rulings or orders and ... expressly informed her that I had not received any court filings since March 9, 2011."

**Objection #14 is to Dec ¶ 16,** which stated, "[S]he forgot or ignored that I demanded that the case be tried by a jury." The Court would note that in many instances, Kraft's assertion that the undersigned "forgot" or "could not comprehend" or "ignored" some principle of law, boils down merely to *disagreement* with this Court's deliberate interpretation and application of the applicable law.

**In his response to the evidentiary objections, Kraft states in pertinent part as follows:**

2. In Paragraphs 1 and 2 of the Declaration of Rune Kraft ..., he explicitly states that he makes this declaration on "own personal knowledge" as to "the facts contained herein."

Since (a) his declarations are based on direct personal knowledge that (b) stem from his role as the Defendant in this legal matter and duly authorized representative of Kraft Americas, L.P., the Defendant and Counterclaimant in this legal matter and (c) Judge Valerie Baker Fairbank currently presides over this legal matter, Rune Kraft has therefore successfully laid a foundation for his knowledge which makes no claim to be, nor is it, based on hearsay, speculation, or impermissible opinions.

* * *

29. The evidence ... also: (a) have [sic] equivalent circumstantial guarantees of trustworthiness; (b) is offered as evidence of a material fact; ( c) the statements are more probative on the point for which they are offered than any other evidence which the proponent can procure through reasonable efforts; and (d) the general purposes of the rules and the interests of justice will best be served by admission of the statements into evidence. Fed. R. Evid. 803, 804(b) and 807.

Doc 294 at 2 and 8. The remainder of Kraft's response, indeed the bulk of his response, has nothing to do with plaintiffs' objections to his declaration or the admissibility of that declaration. *See* Doc 294 at page 2 line 14 through page 7 line 26 (entitled "Standards for Considering Conduct of United States Judges").

The Court determined above that (1) Kraft failed to file his motion for relief from judgment within the time allowed by Federal Rule of Civil Procedure 60 subsection c, and (2) his motion's untimeliness deprives the Court of subject-matter jurisdiction. **Because the Court lacks jurisdiction to entertain the merits of Kraft's motion for relief from judgment, there is no need to address the plaintiffs' evidentiary objections to Kraft's declaration to the extent that the declaration goes to the merits. The Court will consider the plaintiffs' evidentiary objections only to the extent that the targeted paragraphs of Kraft's declaration may be relevant to timeliness or to application of the failure-to-appeal waiver rule.**

First, none of the targeted paragraphs of Kraft's declaration was relevant to the Court's application of the rule that a party who fails to appeal thereby waives his right to seek relief from judgment under FRCP 60(b) later.

Of the paragraphs to which plaintiffs object, only paragraphs 3 and 4 of Kraft's declaration are arguably relevant to his motion's timeliness. For Kraft's sake, the Court has elected not to consider plaintiffs' objections to ¶¶ 3 and 4 of his declaration. Instead, the Court has assumed arguendo that paragraphs 3 and 4 are admissible, and the Court

has considered those paragraphs. The Court therefore will deny plaintiffs' evidentiary objections.

In any event, nothing asserted in paragraphs 3 and 4 of Kraft's Declaration undermines the Court's determination that his motion for relief from judgment is untimely and barred by his failure to appeal.

Kraft's Comments About the Court "Forgetting" or "Ignoring" His Demand for a Jury Trial and His Allegedly Not Receiving Document Filed by Plaintiffs During Part of March 2011

**Kraft's briefs state that the undersigned "forgot or ignored that [KALP and Kraft] demanded that the case be tried by a jury" and "are still waiting to receive any notices from the court as to the trial date and what happened to the trial." Doc 271 at 7 ¶ 15;** *see also* Reply (Doc 293) at 20 ¶ 55 ("The [Judgment] further ignores that the defendant did not receive court filings and that Defendant demanded a jury trial.").

**First, although Kraft has long had access to the complete docket sheet for this case to see which documents have been filed by the Court and by the parties, he still fails to identify which documents he allegedly never received.** Kraft merely asserts, without specifying any document numbers, that the nefarious scheme of plaintiffs' counsel included "a series of filings (motions) falsely informing the court that the Defendant was notified and provided with copies of the filings when in truth and in fact the Defendant was not notified and/or provided copies of the filings." Doc 293 (Reply) at 23 ¶ 64. Without explaining why he could not check the docket to ascertain which documents he supposedly never received, Kraft writes only, "It is unknown to Defendant exactly how many, when and what the issues were" in those unidentified documents, *see id.* The only specific allegation by Kraft on this score is that he did not receive any documents that plaintiffs filed between March 9,2011 and March 31, 2011, as he had claimed in a notice sent to the Court on April 6, 2011. *See id.*

In any event, other than notices advising the Court of a change to the name and

address of counsel's firm (Docs 175-177), the only documents plaintiffs filed between March 9 and 31, 2011 were their summary-judgment reply (Doc 171 filed March 9, 2011), a Report Re: Settlement (Doc 178 filed March 21, 2011), and plaintiffs' opposition to Kraft's motion to void an interlocutory ruling due to "fraud on the court." As to plaintiffs' summary-judgment reply (Doc 171), Kraft had no right to file a sur-reply in any event. As to the mediation report (Doc 178), the Court neither required nor permitted the parties to file responses to that report. As to plaintiffs' opposition to Kraft's motion to void a ruling due to fraud, Kraft points to no authority giving him a right to reply, and the Court properly ruled on his "motion to void" as soon as it received plaintiffs' opposition.

**Second, the Court's orders made perfectly clear what "happened to" to Kraft's demand for a jury trial:** his willful and prolonged bad-faith litigation misconduct in this case, as determined by both the Magistrate and the undersigned, led to enter default judgment against Kraft as a sanction— a sanction this Court amply justified in its Terminating-Sanction Order over five years ago. After the entry of judgment that disposed of all claims and defenses as to all parties, there was no possibility of, and no need for, a trial (by jury or otherwise).

The very concept of a "trial" of claims, counterclaims, and defenses that have already been conclusively disposed of by entry of final judgment, is incoherent. *See, e.g., Gainey v. B'hood of Railway & Steamship Clerks*, 303 F.2d 716, 718 (3d Cir. 1962) ("Of course, technically there is no trial when summary judgment is granted."); *Wyden v. Comm'r of Patents & Trademarks*, 807 F.2d 934, 937 (Fed. Cir. 1986) ("Of course, there having been a summary judgment, there has been no trial."); *see generally Holland v. County of Macomb, Michigan*, 2016 WL 3569409, *3 (E.D. Mich. July 1, 2016) (" '[T]he lenient treatment generally accorded to pro se litigants has limits,' and such litigants are 'not automatically entitled to take every case to trial.' ") (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). Moreover, Kraft never filed a motion for reconsideration or an appeal arguing that

this Court somehow violated his right to a jury trial.

## KRAFT'S VIEW THAT THE COURT HAS KNOWLEDGE OF DISPUTED MATERIAL FACTS

**Finally, Kraft filed a document entitled "Notice to Court About 28 U.S.C. Section 455(b)(1), Code of Conduct for United States Judges and Intent to Obtain the Testimony of Judicial Officers and Other Individuals" (Doc 295).** Kraft explains that he will need to seek testimony from the undersigned judge, from physicians, from two former chief judges of this court (Aubrey Collins 2009-2012 and George King 2012-2016), from a retired magistrate judge "and his clerk", and from court staff who previously worked with the undersigned judge. *See* Doc 295 at 2 ¶ 1. Kraft appears to be arguing that he needs their testimony in order to demonstrate that the undersigned judge should recuse or be disqualified because the undersigned has knowledge of the disputed facts that Kraft has asserted in his Rule 60(b) declaration. Kraft writes in part as follows:

2. *Plaintiffs have filed evidentiary objections—... Document 288 ...—and Defendant disagrees with the filed evidentiary objections.*

3. Judge Valerie Baker Fairbank has personal knowledge of the disputed evidentiary facts and the facts concern this proceeding.

4. The other individuals named in paragraph 1 above also have relevant knowledge.

5. 28 U.S. Code section 455(b)(1) states that *a judge shall disqualify him-self"Where he has* a personal bias or prejudice concerning a party, or *personal knowledge of disputed evidentiary facts concerning the proceeding.*"

6. The Code of Conduct for United States Judges state that "a judge shall accord to every person" ... "the full right to be heard":

Canon 3A(4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law.

Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. * * * Canon 3B(5) A judge should take appropriate action upon learning of reliable evidence indicating the likelihood that a judge's conduct contravened this Code or a lawyer violated applicable rules of professional conduct.

Canon 3B(5). [sic] Appropriate action may include direct communication with the judge or lawyer, other direct action if available, reporting the conduct to the appropriate authorities, . . . . Appropriate action may also include responding to a subpoena to testify or otherwise participating in judicial or lawyer disciplinary proceedings; a judge should be honest with disciplinary authorities.

Doc 295 at 2 ¶¶ 2-6 (emphasis added). As noted above, the Court has dismissed the plaintiffs' evidentiary objections to Kraft's declaration and has not stricken any of Kraft's declaration.

The Court has also considered whether Kraft may be attempting, however inartfully, to make the broader argument that he needs testimony from the individuals mentioned in order to prove the *merits* of his motion for relief from judgment. To the extent that Kraft is making such an argument, it fails because the Court lacks jurisdiction to consider the merits of the motion as stated above.

For all the foregoing reasons, the Court will dismiss Kraft's Rule 60(b) motion with prejudice.

## THE COURT MAY NOT SERVE AS AN ADVOCATE OR PARALEGAL FOR ANY PARTY

Kraft concludes his reply with a footnote asserting that "if there is any possible theory that would entitle the Defendant to relief, even one that Defendant hasn't thought of, the court should consider it." Doc 293 at 33 n.9. Kraft cites no authority for this assertion, and the Court finds none.

It was plaintiffs' burden to show that they were entitled to relief on their claims under a cognizable legal theory properly applied to the demonstrated facts. By the same token, it was a defendant's burden to show that he was entitled to relief on any counterclaims. As to this motion, it is Kraft's burden to show he is entitled to relief from judgment under a cognizable legal theory and consistent with the FRCP and cases interpreting them.

 **If the Court had acted as an advocate or researcher for either side, it would contravene a court's fundamental duty to be impartial. This was true during the proceedings leading to the judgment, and it is true in proceedings on this post-judgment motion.** "The Supreme Court has made it clear that the Court has 'no obligation to act as counsel or paralegal to pro se litigants.'" *Davis v. Riverside County Sheriff's Dep't*, 2016 WL 1642558, *5 (C.D. Cal. Apr. 25, 2016); *see also Mir v. Kirchmeyer*, 2016 WL 2745338, *5 (S.D. Cal. May 11, 2016) ("[I]n giving liberal interpretation to a pro se complaint, the court is not permitted to 'supply essential elements of the claim that were not initially pled.'") (quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)); *Lambert v. Mecklenburg Cty.*, 2016 WL 3176593, *2 (W.D.N.C. June 2, 2016) ("'[A]lthough district courts must liberally construe pro se complaints, courts cannot act as the pro se plaintiff's advocate and cannot develop claims which the plaintiff failed to clearly raise on the face of the Complaint.'") (citing, *inter alia*, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)); *see, e.g., Biers v. Wash. State Liquor & Cannabis Board*, 2016 WL 3079025, *9 (W.D. Wash. June 1, 2016) ("[T]he Court is under no obligation to . . . scour large portions of Mr. Biers' complaint to find support for his conclusory statements, nor will the Court attempt on its own to piece together plausible claims from Mr. Biers' voluminous allegations.").

 **If Kraft failed to include or cite to any relevant factual allegations, legal theories, or authorities in this motion, the Court may not supply such for him.** With

the exception of subject-matter jurisdiction, the court is obligated and authorized to address only those claims and issues that have been expressly pled. *See, e.g., 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("Because Robinson never pleaded breach of express and implied trust, the district court did not err in failing to consider them.").

 A district court may not "conjure up questions not squarely presented" by the parties' submissions, *see Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), and the Court " 'need not argue a pro se litigant's case nor create a case for the pro se' ", *Campbell v. Accounts Receivable Mgmt.*, 2016 WL 3212084, *1 (E.D.N.Y. June 8, 2016) (citation omitted). *Accord Fesenmeyer v. City of Kansas City, Mo.*, 2016 WL 3167264, *1 (W.D. Mo. June 6, 2016) ("[A] court 'need not supply additional facts' nor 'construct a legal theory ... that assumes facts that have not been pleaded.' ") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)), *app. filed*, No. 16–2997 (8th Cir. June 30, 2016). *Cf. Holland v. Macomb Cty., Mich.*, 2016 WL 3569409, *3 (E.D. Mich. July 1, 2016) (even where the litigant is pro se, " 'courts should not have to guess at the nature of the claim asserted.' ") (quoting *Frengler v. GM*, 482 Fed.Appx. 975, 976–77 (6th Cir. 2012)); *Martin v. Harshman*, 2016 WL 3196667, *1 (D. Md. June 9, 2016) (while a court "must hold [a] pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally", the court "need not look beyond the complaint's allegations") (quoting *White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989)).

## ORDER

**Defendant Rune Kraft's Fed. R. Civ. P. 60(b) motion to vacate the June 22, 2011**

judgment [Doc #280] is DISMISSED with prejudice for lack of subject-matter jurisdiction because the motion is untimely and because the motion is barred by his failure to appeal from said judgment.

Plaintiffs' "Evidentiary Objections to Declaration of Rune Kraft in Support of Request to Reopen Case" [Doc #288] are DISMISSED.

Any motion for reconsideration pursuant to Fed. R. Civ. P. 59(e) must be filed within twenty-eight calendar days of the date of this order. *See Amerson v. Kindredcare, Inc.*, 606 Fed.Appx. 371, 372 (9th Cir. 2015) ("The time period for filing a Rule 59(e) motion is jurisdictional and cannot be extended by the court.") (citing Fed. R. Civ. P. 6(b) and *Carter v. U.S.*, 973 F.2d 1479, 1488 (9th Cir. 1992)).

Any motion for reconsideration must comply with Local Civil Rule 7-18."[7]

Kraft should **not** file another Rule 60(b) motion on grounds already stated in the instant motion. *Accord Smith v. Siarnicki*, 397 Fed.Appx. 250, 252 (7th Cir. 2010) (affirming denial of motion for relief from judgment, "If Smith was dissatisfied with the district court's ruling on his first postjudgment motion, then his recourse was to appeal to this court, not to file a second motion raising similar arguments.") (internal citation omitted).

This is an immediately appealable order. *See Zurich No. Am. v. Matrix Service, Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005).[8] IT IS SO ORDERED.

---

**7.** By operation of FRAP4(a)(4), the filing of a timely Rule 59(e) motion for reconsideration of today's Order will defer the time to appeal today's Order. *See The York Group, Inc. v. Wuxi Taihu Tractor Co., Ltd.*, 632 F.3d 399, 401 (7th Cir. 2011) (citing, *inter alia*, 16A Wright, Miller, Cooper, & Struve, Fed. Prac. & Proc. § 3950.4 (2d ed. 2008)). FRAP 4(a)(4)(A)(iv) provides that "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion[.]"

**8.** An appeal from the denial of a 60(b) motion, however, is not a means to challenge the underlying decision. *See Blue v. IBEW Local Union 159*, 676 F.3d 579, 584 (7th Cir. 2012); *U.S. v. Booker*, 352 Fed.Appx. 102, 103 (7th Cir. 2009) ("[I]n reviewing the denial of a 60(b) motion, an

appellate court does not have jurisdiction to review arguments attacking the merits of the underlying decision that could have been raised on direct appeal.") (citing *Browder v. Director, Dep't of Corrs. of Ill.*, 434 U.S. 257, 263 n.7, 98 S.Ct. 556, 560 n.7, 54 L.Ed.2d 521 (1978)). "The only reviewable decision is that on the Rule 60(b) motion itself. Antecedent decisions cannot be reviewed, because they were final and the time to appeal expired." *York Group*, 632 F.3d at 401 (cite omitted).